**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 1:10-cv-6331 |
| *Respondent*, | ) | |
| | ) | Underlying Case: No. 1:02-CR-00137 |
| v. | ) | |
| | ) | Hon. Ronald A. Guzman |
| RONALD MIKOS, | ) | |
| | ) | CAPITAL CASE |
| *Petitioner*. | ) | |

**PETITIONER'S STATEMENT IN RESPONSE TO
THE COURT'S JULY 21, 2020 ORDER**

Petitioner Ronald Mikos, through counsel, respectfully files this Statement in response to the Court's July 21, 2020 Order. In that Order, the Court gave Mr. Mikos's counsel twenty-one days to file a statement indicating a date by which he will file a reply in support of his § 2255 motion. (Dkt. 115.) In this Statement, Mr. Mikos respectfully suggests that he be permitted 90 days in which to file a motion for leave to conduct discovery, as Mr. Mikos's counsel believe that is the next step in this proceeding. To assist the Court in evaluating this request, provide context for the age of the case, and demonstrate the diligence of Mr. Mikos and his counsel in pursuing Mr. Mikos's requests for relief, Mr. Mikos's counsel also provides background on this matter and its history. To the extent the Court requires additional information or believes a different course is warranted, or the Government objects to this request, Mr. Mikos's counsel respectfully seeks: (a) leave to respond to any objection from the Government, or (b) a telephonic or video status hearing to address the Court's questions or concerns. In support of these requests, Mr. Mikos states as follows:

## I.      Mr. Mikos Files His § 2255 Motion.

1.      Mr. Mikos, through his counsel, timely filed his Motion under 28 U.S.C. § 2255 for a New Trial and to Vacate, Set Aside, and Correct Conviction and Death Sentence (the "§ 2255 Motion") on October 4, 2010. (Dkt. 1.) The § 2255 Motion raises eleven separate claims, spans 142 pages, and contains 43 exhibits. (*Id.*)

2.      The § 2255 Motion asks for the substantive relief of vacating Mr. Mikos's murder conviction and death sentence, as well as various forms of procedural relief to ensure Mr. Mikos receives due process with respect to his § 2255 Motion. (*Id.* at 142-43.) Specifically, Mr. Mikos's § 2255 Motion asks the Court to: (a) schedule the filing of legal briefs and memoranda in support of the § 2255 Motion "so that the Court may be fully informed"; (b) permit Mr. Mikos to initiate and conduct discovery in order to "fully develop and identify the facts supporting" the § 2255 Motion and to address "any defenses raised by the Respondent's Answer"; (c) permit Mr. Mikos to amend his § 2255 Motion "to include any additional claims or allegations not presently known to him or his post-conviction counsel, which are identified or uncovered in the course of discovery, investigation, and/or litigation" of the § 2255 Motion; (d) "grant Mr. Mikos an evidentiary hearing on all claims raised" in the § 2255 Motion; and (e) permit oral argument "as appropriate and required." (*Id.*)

## II.      The Government Seeks and Is Granted Seven 60-Day Extensions of Time to Respond to Mr. Mikos's § 2255 Motion.

3.      On October 13, 2010, which was nine days after Mr. Mikos filed the § 2255 Motion, the Court entered a Minute Order requiring the Government to respond to Mr. Mikos's § 2255 Motion by November 15, 2010. (Dkt. 8.)

4.      Thereafter, and noting the complexity of the case, the Government, through David Bindi, the Assistant U.S. Attorney then assigned to the case, sought and received seven 60-day

2

extensions of the deadline the Court had set for the Government's response. (Dkt. 9 (seeking extension until Jan. 14, 2011); Dkt. 11 (granting such extension); Dkt. 12 (seeking extension until Mar. 15, 2011); Dkt. 14 (granting such extension); Dkt. 16 (seeking extension until May 16, 2011); Dkt. 18 (granting such extension); Dkt. 19 (seeking extension until July 15, 2011); Dkt. 21 (granting such extension); Dkt. 22 (seeking extension until Sept. 13, 2011); Dkt. 24 (granting such extension); Dkt. 25 (seeking extension until Nov. 14, 2011); Dkt. 27 (granting such extension); Dkt. 28 (seeking extension until Jan. 3, 2012); Dkt. 30 (granting such extension).)

5. The Government, through Mr. Bindi, filed each of those requests for additional time with the consent of Mr. Mikos's counsel. The Court granted each of them without requiring hearings or any additional filings from counsel.

### III. Once the Government Filed Its Response, Mr. Mikos's Counsel Initiated Discussions with the Government Concerning Next Steps, Including Requests for Discovery.

6. The Government filed a response to Mr. Mikos's § 2255 Motion on January 3, 2012. (Dkt. 31.)

7. Promptly upon the filing of that response, Mr. Mikos's counsel reached out to Mr. Bindi to discuss the next steps in this matter. The parties spoke by phone on January 19, 2012.

8. Mr. Mikos's counsel followed that discussion with a letter, dated January 25, 2012. (Ex. 1, Jan. 25, 2012 Ltr. to D. Bindi.) In that letter, counsel indicated that, consistent with Rule 6(a) of the Rules Governing Section 2255 Proceedings, Mr. Mikos intended to seek discovery to support his § 2255 Motion. (*Id.*) The letter included draft discovery requests for purposes of advancing the discussion and determining if the parties could reach agreement on any aspect of Mr. Mikos's requests. (*Id.*) The letter also indicated that, if the Government did not agree to provide Mr. Mikos with his requested discovery, the parties should discuss and try to reach agreement on a briefing schedule on a motion for discovery, a timeframe for completing discovery

3

if the Court granted the motion, and a proposal for further proceedings, including amending Mr. Mikos's § 2255 Motion or responding to the Government's response to the § 2255 Motion.  (*Id.*)

9.       On January 31, 2012, Mr. Bindi acknowledged the letter by email.  (Ex. 2, Jan. 31, 2012 Email from D. Bindi.)  Mr. Bindi indicated that he believed some of the requested discovery could be provided to Mr. Mikos, though some may be subject to objection.  (*Id.*)  He noted, however, that, "it is going to take me some time to sort through this."  (*Id.*)  Mr. Bindi suggested that, consistent with a proposal made by Mr. Mikos's counsel in their January 25 letter, the parties file a "joint statement to the Court that the parties are in discussions and will advise the Court as appropriate regarding further proceedings."  (*Id.*)

10.      Accordingly, on February 1, 2012, Mr. Mikos and the Government filed a joint status report concerning their discussions.  (Dkt. 32.)  In that joint status report, the parties noted that Mr. Mikos's § 2255 Motion indicated he intended to seek leave to conduct discovery to develop his claims and "when appropriate, to file a memorandum of law and/or additional briefing in support of his § 2255 Motion."  (*Id.* ¶ 3.)  The parties also stated that they were "discussing further proceedings in this matter, including potential discovery, and [we]re working together to determine whether they can reach agreement on certain issues."  (*Id.* ¶ 4.)  The parties asked to update the Court again in sixty days.  (*Id.* ¶ 5.)  On February 7, 2012, the Court entered an Order indicating that the parties should file a joint status report on April 9, 2012.  (Dkt. 33.)

**IV.      Mr. Mikos's Requests Remained Under Evaluation by the Government for Five Years.**

11.      On March 6, 2012, Mr. Mikos's counsel reached out to Mr. Bindi concerning his evaluation of Mr. Mikos's requests for discovery.  Mr. Bindi replied that he had "met with the FBI agent who worked on the prosecution of this case" because Mr. Bindi "need[ed] help with the discovery request."  (Ex. 3, Mar. 6, 2012 Email from D. Bindi.)  Mr. Bindi indicated that he and

4

the FBI agent "have been working on it when we can, but not a lot of progress has been made yet." (*Id.*)

12. A few weeks later, on March 28, 2012, Mr. Bindi advised Mr. Mikos's counsel that "[w]e are going to have to report [to the Court] that more time is needed to negotiate the discovery request," as "[t]he case agent and [Mr. Bindi] have schedules that don't mesh well" and the two had not "had sufficient time to consider all of the requests." (Ex. 4, Mar. 28, 2012 Email from D. Bindi.) Mr. Bindi further indicated that he and the FBI agent had "made some progress," but Mr. Bindi preferred "not [to] deal with this piecemeal" and instead present "a comprehensive response" when the Government was "ready to do so." (*Id.*) Mr. Bindi suggested the parties file a status report requesting another sixty days in which to update the Court. (*Id.*) The parties filed such a status report on April 6, 2012. (Dkt. 34.)

13. For the next five years, the Government weighed the discovery requests, and Mr. Mikos's counsel diligently inquired of Mr. Bindi at periodic intervals. As a result of those inquiries, Mr. Mikos and the Government filed status reports every sixty days, indicating that their discussions concerning discovery and related matters had not concluded. (Dkts. 35-42; 46-48; 52-68.)

**V.      The Government and Mr. Mikos Engage in Further Discussions in 2017, with the Government Indicating in October 2017 That It Needed Time to Further Consider the Next Steps in This Litigation.**

14. On March 21, 2017, the Government, through Mr. Bindi, sent Mr. Mikos's counsel a response to the January 2012 letter from Mr. Mikos's counsel concerning discovery. (Ex. 5, Mar. 21, 2017 Ltr. from D. Bindi.) In that letter, Mr. Bindi indicated, for the first time, that he did not believe the Government could provide Mr. Mikos with his requested discovery, but he also requested further discussion. (*Id.*) He further suggested that "any additional briefing that might need to be submitted in support of and in opposition to the Section 2255 motion" should be "taken

5

up with the district court at the appropriate time, after questions regarding discovery have been resolved." (*Id.*)

15.     Mr. Mikos's counsel promptly responded to Mr. Bindi's letter by seeking a phone conversation with Mr. Bindi.  During that conversation, which occurred on March 28, 2017, Mr. Mikos's counsel (April Otterberg and one of Mr. Mikos's previously appointed lawyers, Barry Levenstam, both of Jenner & Block LLP) reminded Mr. Bindi that he had previously stated that he believed the Government could provide some of the requested discovery to Mr. Mikos.  Mr. Mikos's counsel also indicated that they would require time to determine the next steps in this matter.  Mr. Bindi agreed that Mr. Mikos's counsel could take the time they required.  In the meantime, the parties filed additional joint status reports with the Court.  (Dkts. 69-72.)

16.     On September 25, 2017, Mr. Mikos's counsel sent Mr. Bindi a letter concerning discovery and related matters and seeking to continue the parties' discussions.  (Ex. 6, Ltr. from A. Otterberg to D. Bindi.)  That letter included revised draft discovery requests and responses to certain issues that Mr. Bindi had raised.  (*Id.*)

17.     Thereafter, Mr. Bindi indicated he was evaluating that letter, and the parties reported that to the Court in additional joint status reports.  (Dkts. 73-81.)

**VI.     Mr. Mikos's Initial Appointed Counsel, Barry Levenstam, Withdraws in May 2019.**

18.     By May 2019, Mr. Bindi had not provided a response to the September 2017 letter. On May 28, 2019, the parties filed a joint status report that indicated that more time was needed to discuss discovery and other matters.  (Dkt. 82.)  In addition, that report stated that one of Mr. Mikos's longtime appointed counsel, Mr. Levenstam, was in the process of retiring from the practice of law and would be seeking to withdraw from his appointment.  (*Id.*)

19.     The next day, May 29, 2019, Mr. Mikos's counsel filed a motion seeking leave for Mr. Levenstam to withdraw from this case, to substitute Ms. Otterberg in his place, and to appoint

counsel from the Federal Defender for the Middle District of Pennsylvania (the "MDPA") as additional counsel. (Dkts. 83-84.) Mr. Bindi indicated that he did not object to the change of counsel. (Dkt. 83, ¶ 5.)

20. On May 30, 2019, the Court granted the motion, allowing Mr. Levenstam to withdraw and counsel to be substituted. (Dkt. 86.) On June 14, 2019, Leane Renée of the MDPA filed a motion to appear *pro hac vice* (Dkt. 87); this Court granted that motion on June 26, 2019 (Dkt. 88).

## VII. Mr. Bindi Retires in July 2019, and Mr. Mikos's Other Longtime Appointed Counsel Withdraws in October 2019.

21. On July 17, 2019, Mr. Bindi advised Mr. Mikos's counsel that he would be retiring from the U.S. Attorney's office that week. At that time, Mr. Bindi had not responded to the September 25, 2017 letter from Mr. Mikos's counsel concerning discovery matters.

22. On July 29, 2019, Assistant U.S. Attorney Corey Rubenstein entered his appearance (Dkt. 90), and the parties filed a joint status report indicating that new counsel for both parties needed time to get up to speed and would report to the Court in 91 days on October 28, 2019 (Dkt. 89).

23. Before that 91-day timeframe expired, the other longtime appointed counsel for Mr. Mikos, Marie Donnelly, sought to withdraw from representing Mr. Mikos because she had accepted a position with a federal public defender's office in Florida. (Dkt. 91.) The Court granted Ms. Donnelly's motion to withdraw on October 29, 2019. (Dkt. 94.)

24. Ms. Donnelly's withdrawal at this time was unexpected, and it meant that both of Mr. Mikos's appointed counsel had withdrawn from the representation within the span of a few months.

25.     Although Ms. Otterberg has represented Mr. Mikos for a number of years, including at the time Mr. Mikos filed his § 2255 Motion in 2010, she was never the senior lawyer appearing for Mr. Mikos, nor does she have experience in death penalty matters outside of the context of this case.  The seniority and death penalty experience came from Mr. Levenstam and Ms. Donnelly—the two lawyers who have withdrawn from this matter.  Indeed, at the time counsel filed Mr. Mikos's § 2255 Motion, Ms. Otterberg had been licensed to practice law for just shy of four years.  In May 2019, Ms. Otterberg agreed to seek to substitute for Mr. Levenstam as one of Mr. Mikos's appointed counsel because (a) she is the only lawyer who remains at Jenner & Block who assisted in preparing Mr. Mikos's § 2255 Motion, and (b) she expected to have the full support and assistance of both Ms. Donnelly as well as the MDPA in determining and pursuing the next steps in this case.

## VIII.   In October 2019, the Government Indicates—for the First Time—That It Will Not Voluntarily Provide Discovery and That No Further Discussions Would Be Productive.

26.     During the month of October 2019, Mr. Rubenstein and Mr. Mikos's counsel discussed this case, and Mr. Rubenstein indicated that the Government would not agree to voluntarily provide Mr. Mikos with any discovery.  This was the first time in this proceeding in which the Government indicated that it would not agree to provide any discovery *and* that no further discussions would be productive.

27.     The Government's decision came at a time when (a) Mr. Mikos had experienced a complete turnover in his original and longtime appointed counsel, and (b) Jenner & Block was working to provide the MDPA with the very voluminous files the firm maintains in relation to its representation of Mr. Mikos.  Indeed, the volume is such that it took some time to provide the materials to the MDPA, especially given the disruptions caused by the COVID-19 pandemic.  (*See* Dkt. 110, July 20, 2020 Status Rpt.)

28.     Mr. Mikos and the Government filed a joint status report on October 28, 2019. (Dkt. 93.)  In that report, Mr. Mikos's counsel indicated that they needed more time to assess the case files and determine the next steps in this case, while the Government indicated that it believed the Court should hold a status hearing.  (*Id.*)  This was the first time in this case that the Government requested a status hearing.

29.     Thereafter, the Court scheduled a status hearing for December 18, 2019.  (*See* Dkt. 94.)

**IX.     The Court Holds a Status Hearing in December 2019, Mr. Mikos's Counsel Work on File Transfer, and Mr. Mikos's New Counsel Work to Evaluate the Case.**

30.     On December 18, 2019, the parties appeared before the Court.  Counsel for Mr. Mikos, Ms. Renée and Ms. Otterberg, explained the need to continue to work on transferring case files and for the MDPA to review the files and get up to speed in the case.  As a result of that hearing, the Court directed the MDPA to file a status report on the file transfer issues within 30 days.  (Dkt. 97 at 6.)

31.     Over the ensuing months, Jenner & Block and Mr. Mikos's former counsel, Ms. Donnelly, undertook extensive efforts to copy and transfer files to the MDPA.  Ultimately, as noted in the most recent July 20, 2020 status report, the MDPA has received more than a quarter of a million pages of materials maintained by Jenner & Block or Ms. Donnelly in hard copy, plus an additional nearly 38,000 files maintained electronically by Jenner & Block or Ms. Donnelly.  (Dkt. 110.)

32.     While the file transfer effort was underway, the COVID-19 pandemic intervened. As detailed in recent status reports, the pandemic has meant, among other things, that the MDPA has been unable to conduct various field investigations that are necessary to evaluate this case and make decisions about the next steps and overall case strategy.  At this time, it would be

irresponsible and unsafe to dispatch investigators to attempt witness interviews amid the "social distancing" recommendations and the CDC guidelines for limiting contact. Additionally, such recommendations and guidelines advise against the types of contact necessary for document retrieval and expert evaluations contemplated by the MDPA in its efforts to fully and adequately litigate Mr. Mikos's habeas claims. Nevertheless, the MDPA continues to monitor the COVID-19 situation closely, and the members of Mr. Mikos's legal team are making every reasonable effort to provide him with high-quality representation while also following the professional standards and best practices necessary in death penalty investigation and representation.

33. In addition, although the MDPA has made substantial progress, the case files related to Mr. Mikos are extraordinarily voluminous, and the review is time-consuming. In fact, as indicated in the July 20, 2020 status report, the MDPA is awaiting one final set of several boxes of physical materials that cannot be transferred electronically and that remains with Jenner & Block. (*See* Dkt. 110.) Arrangements for their transfer are being made, although doing so has been more difficult in light of current COVID-19 restrictions. (*Id.*) MDPA has determined that those materials will need to be reviewed and that, for audio/video materials, transcription will be needed. (*Id.*)

34. As the Court is aware, the Government has recently taken the position that extensive review is not required because the claims appear on the face of the § 2255 Motion. (Dkt. 114, ¶ 6.) Mr. Mikos's counsel disagree. Counsel have a duty to provide Mr. Mikos with high-quality legal representation, which necessarily includes a full and extensive review of the record in this case.

35. This review is required because, under the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases ("ABA Guidelines"), "[p]ost-

10

conviction counsel should seek to litigate all issues, whether or not previously presented, that are arguably meritorious under the standards applicable to high quality capital defense representation . . . . Counsel should make every professionally appropriate effort to present issues in a manner that will preserve them for subsequent review." ABA Guidelines 10.15.1.C. In discharging this duty, counsel are obliged to, among other things, "keep under continuing review the desirability of modifying prior counsel's theory of the case in light of subsequent developments; and [ ] continue an aggressive investigation of all aspects of the case." *Id*. at 10.15.1.E(3)-(4).

36.     Further, as to the MDPA, the MDPA's Capital Habeas Unit ("CHU") is an organization dedicated to representing people sentenced to death at all stages of the habeas process, from the habeas petition through all appeals. CHU attorneys regularly litigate in federal district court, courts of appeals, and the United States Supreme Court and, thus, possess the level of expertise, knowledge, and depth of representation needed in Mr. Mikos's case. As such, the MDPA is qualified capital habeas counsel under the standards set forth in 18 U.S.C. § 3599(a)(2).[1] *See also McFarland v. Scott*, 512 U.S. 849, 854, 858 (1994) (holding that once a capital defendant files a motion requesting appointment of counsel, he is granted "a mandatory right to qualified legal counsel," and that right "necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims."). Ms. Otterberg does not individually possess this level

---

[1] Section 3599(a)(2) provides, in relevant part,

> In any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f) [(relating to conditions of appointment)].

18 U.S.C. § 3599(a)(2).

of expertise and requires the assistance and guidance of the MDPA for her to meaningfully and competently assist in Mr. Mikos's representation in this matter.

37. Given the complexity of capital litigation and the time required to properly litigate such cases, *see, e.g.*, 18 U.S.C. § 3599(d) (acknowledging "the unique and complex nature" of capital habeas litigation); *McFarland*, 512 U.S. at 855-56 ("[T]his Court's death penalty jurisprudence unquestionably is difficult even for a trained lawyer to master") (quotation and citation omitted)), counsel needs—and is entitled to—time for meaningful preparation. As explained below, the next step in this case is a motion for leave to conduct discovery. To litigate such issues consistent with the standards set forth in the ABA Guidelines and 18 U.S.C. § 3599(a)(2), counsel must be up to speed not only on the claims set forth in the § 2255 Motion, but also on what specific evidence exists—or potentially can be developed—in support of those claims. Mr. Mikos's counsel need to satisfy themselves that they have identified all appropriate requests for discovery, which may include additional or different requests compared to those first raised with Mr. Bindi and drafted under the direction of Mr. Mikos's prior appointed counsel.

**X. Mr. Mikos Requests 90 Days to Prepare and File a Motion for Leave to Conduct Discovery.**

38. Mr. Mikos's counsel believe that the next phase in this case is a motion for leave to conduct discovery, pursuant to Rule 6(a) of the Rules Governing Section 2255 Proceedings. This was the step long contemplated with Mr. Bindi (*see supra*, at ¶¶ 7-17), and Mr. Rubenstein also recently acknowledged that the Government believes the next step is either further briefing on the § 2255 Motion or briefing on a request for leave to conduct discovery (Dkt. 114, ¶ 7).

39. Mr. Mikos's counsel suggest discovery as the next step in this proceeding because substantial aspects of his claims rely on evidence and documents that are uniquely within the Government's possession. Mr. Mikos intends to ask the Court to allow his experts to have access

12

to and to examine certain physical evidence used by the Government to obtain Mr. Mikos's conviction.  In addition, Mr. Mikos intends to seek other discovery, most likely by serving sets of interrogatories and/or requests for document production, as well as conducting necessary depositions, that will further support the claims presented in his § 2255 Motion.  If the Court grants leave to conduct discovery, Mr. Mikos may develop evidence that further supports his § 2255 Motion or that provides a basis to seek leave to amend the Motion.  As a matter of judicial efficiency, as well as ensuring the full presentation of the relevant facts, it makes sense, and serves judicial economy, to resolve the discovery issues before further briefing on Mr. Mikos's § 2255 Motion takes place.  That briefing that may include, but is not limited to, a consolidated amended habeas petition and supporting memorandum of law.

40.     In addition, as a death-sentenced petitioner, Mr. Mikos has a right under the Rules to ask the Court for leave to conduct discovery to support the claims raised in his § 2255 Motion.  *See* Rule 6(a) of the Rules Governing § 2255 Proceedings; *Tabb v. Christianson*, 855 F.3d 757, 764 (7th Cir. 2017) (articulating standards for obtaining such discovery).  The United States Supreme Court has explained that "[t]he very nature of [habeas proceedings] demands that [they] be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected."  *Harris v. Nelson*, 394 U.S. 286, 291 (1969).  This is never more true than in the context of capital cases, in which the unique finality and irreversibility of the sentence require heightened procedural safeguards.  Federal habeas petitioners must be "entitled to careful consideration and plenary processing of their claims including full opportunity for presentation of the relevant facts," *Harris*, 394 U.S. at 298, and discovery can be "indispensable to a fair, rounded development of the material facts," *East v. Scott*, 55 F.3d 996, 1001 (5th Cir. 1995) (quotation and citation omitted).  The need to develop the full record is particularly acute

13

in capital cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long" magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Thus, "if death is involved, the petitioner should be presented every opportunity possible, consistent with the interests of the state, to present facts relevant to his constitutional claims." *Wilson v. Butler*, 825 F.2d 879, 883 (5th Cir. 1987).

41. Mr. Mikos's counsel seek 90 days in which to develop and file Mr. Mikos's motion for leave to conduct discovery. That amount of time is required because, under Rule 6(a), Mr. Mikos's motion must specify what discovery he seeks. *See* Rule 6(a) of the Rules Governing § 2255 Proceedings. Although Mr. Mikos's counsel previously presented the Government with some draft discovery requests to aid in discussing discovery matters, these requests were not final, and they were drafted before Ms. Renée and her colleagues at the MDPA were appointed to represent Mr. Mikos. Mr. Mikos's current lawyers need time to ensure that the scope and content of Mr. Mikos's requests is fully appropriate in their judgment and based on their assessment of the facts that may be developed to support Mr. Mikos's claims.

42. To the extent the Court seeks additional information or the Government files an objection to this request, Mr. Mikos asks for leave to respond to that objection, as well as a telephonic or video status hearing to address any questions or concerns.

14

15

Dated: August 11, 2020

Respectfully submitted,

RONALD A. MIKOS

By:    s/ Leane Renée
      Leane Renée
      Beth Ann Muhlhauser
      Office of the Federal Public
      Defender for the Middle District
      of Pennsylvania
      Capital Habeas Unit
      100 Chestnut Street, Third Floor
      Harrisburg, PA 17101
      (717) 782-3843
      Appearing *Pro Hac Vice*


By:    s/ April A. Otterberg (w/consent)
      April A. Otterberg
      JENNER & BLOCK LLP
      353 N. Clark Street
      Chicago, IL  60654
      (312) 222-9350
      (312) 527-0284 (fax)

*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I, Leane Renée, an attorney for Petitioner Ronald Mikos, hereby certify that on August 11, 2020, I caused a copy of the foregoing **Petitioner's Statement in Response to July 21, 2020 Order** to be served upon the following via electronic filing through the CM/ECF system:

> Assistant U.S. Attorney Corey Rubenstein
> United States Attorney's Office
> 219 S. Dearborn St., 5th Floor
> Chicago, IL 60604-1702
> usailn.ecfausa@usdoj.gov
> corey.rubenstein@usdoj.gov
>
> *Counsel for Respondent the United States*

> s/ Leane Renée
> Leane Renée
> Office of the Federal Public
> Defender for the Middle District
> of Pennsylvania
> Capital Habeas Unit
> 100 Chestnut Street, Third Floor
> Harrisburg, PA 17101
> (717) 782-3843
> Appearing *Pro Hac Vice*