# EXHIBIT 1



# FEDERAL PUBLIC
# DEFENDER

MIDDLE DISTRICT OF PENNSYLVANIA

**Chief Federal Public Defender**
Heidi R. Freese

**First Assistant**
**Federal Public Defender**
Ronald A. Krauss

**Chief, Capital Habeas Unit**
Leane Renée

**Assistant**
**Federal Public Defenders**
Beth A. Muhlhauser
Kelly D. Miller
James T. Lawley
Alexandra K. French

**Staff Attorney**
Gerald J. Bierbaum
Jason F. Ullman
Alexandra A. Miller

**HARRISBURG OFFICE**
100 Chestnut Street, 3rd Fl.
Harrisburg, PA 17101
Tel.: 717-782-3843
Fax: 717-782-3966

**BY EMAIL**

3 November 2020

Corey B. Rubenstein
Assistant United States Attorney
219 S. Dearborn Street
Chicago, IL 60604
Corey.Rubenstein@usdoj.gov

Re:     *United States v. Mikos*, Case No. 10-CV-6331 (N.D. Illinois)

Dear Mr. Rubenstein:

As you know, our motion on behalf of Ron Mikos seeking leave to conduct discovery is due this coming Monday, November 9, 2020. In advance of that motion, we are writing to identify the discovery requests we currently plan to include in our motion. These requests are listed in the attachment to this letter. Some, but not all, of these requests were set forth in prior correspondence with David Bindi concerning discovery. We are providing this list for your consideration and to assess whether there are any discovery requests the Government may be able to address on consent and without the need for a court order. Please let us know what we may state in our discovery motion about the Government's position concerning our discovery requests.

We note one of our requests specifically, as we are hopeful that this can be addressed by agreement. We need access to the exhibits admitted at trial, as we are unsure whether we have a complete set of the documents in our files. Additionally, we request access to all original trial exhibits, including all tangible evidence which cannot be duplicated, for purposes of our own analysis, testing, and expert review. Our review is hampered, in part, by the fact that the lawyers at trial did not number the exhibits. The Court ordered the Government to preserve these materials on May 12, 2006. Dkt. 428, Case No. 02-CR-00137. Please let us know if you will agree to our request to obtain paper exhibits and grant access to all tangible exhibits.

In addition to the enclosed requests that are directed to the Government, we intend to ask the Court for leave to issue subpoenas to various governmental bodies or private parties. In the attached list, the requests that have an asterisk (*) are requests that we intend to seek court

November 3, 2020
Page 2

orders for the Government (which includes all those who were part of the prosecution team, *see, e.g., United States v. Wilson*, 237 F.3d 827, 832 (7th Cir. 2001) (*Brady* obligations extend to the "investigation team")), as well as issue subpoenas to other relevant governmental bodies or private parties. To avoid repetition, we have not included "* FBI;" we will seek an order for FBI response to all of the requested records. We will also seek leave to serve interrogatories or depose witnesses and custodians of record in this matter. Please let us know if the Government opposes Mr. Mikos's request for interrogatories, depositions, or leave to serve court orders or subpoenas on the specified entities.

We also intend to file a motion asking the Court to enter an order allowing us to obtain transcripts from pre-trial hearings that were held on an *ex parte* basis. There is at least one such hearing, which occurred on October 13, 2005, for which the court reporter has indicated that a court order would be required to release the transcript to us. The docket entry for October 13, 2005, notes an *ex parte* hearing held at Defendant's request. Our motion will ask the Court to release to us—and not the Government, at this time—the transcript from this hearing, as well as the transcripts of any other *ex parte* hearings that may have occurred and for which we do not have transcripts. We would provide the Government with copies of transcripts from *ex parte* hearings if and to the extent called for in future proceedings in this case, but we think that Mr. Mikos alone is entitled to these materials in the first instance. Please let us know if we may state in our motion that the Government does not oppose our requested relief, or if the Government has a different position that we can recite in our motion.

We look forward to your prompt response on these matters. Please let us know if you would like to discuss these requests in a phone call prior to our Monday deadline.

Sincerely,

Leane Renée

Encl.

cc:     Beth Ann Muhlhauser
        April A. Otterberg

## List of Discovery Requests

For purposes of this discovery request, "record" or "records" shall be given the broadest possible meaning and shall include but not be limited to any writing of any kind, type or description, including but not limited to, writing or recording of information of any kind, correspondence, letters, memoranda, facsimiles, electronic mail (email), notes, desk calendars, diaries, statistics, telegrams, minutes, contracts, reports, studies, checks, invoices, statements, receipts, returns, warranties, guaranties, summaries, pamphlets, books, brochures, prospectuses, interoffice and intra-office communications, notations of any sort of conversation, telephone call messages, meetings or other communications, computer data, or other material of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tapes, film electronic facsimiles, computer storage devices, or any other medium, investigation notes, investigation records, investigation summaries, correlation summaries, surveillance (physical, electronic, photographic), case reports, interrogation reports, surveillance logs, FISUR log cover sheets, photographs, video and audio records and all transcribed statements, computer files, i-drive records, transfers of physical evidence, releases of physical evidence, diagrams, crime reports, follow-up investigation reports, toxicology reports, forensic reports, laboratory reports, evidence impound reports, warrants of arrest, search warrants, consent to search documents, returns of search warrants, extradition documents, polygraph examinations, travel documents, travel forms. The terms also mean a copy where the original is not in your possession, custody or control and every copy of a record if such copy is not an identical duplicate of the original.

The records requested pertain to the investigation and prosecution of Ronald Mikos for the murder of Joyce Brannon, including the related investigation and prosecution for Medicaid/Medicare fraud, unless otherwise specified.

1. All records relating to any firearm bearing the serial number 328966, including any firearms with a serial number consisting of an initial digit or letter followed by 328966. *ATF.

2. All records relating to the manufacture, specifications, or rifling characteristics of all models or versions of any firearm identified as (1) a Hawes Deputy Combo, (2) a Hawes Deputy Marshal, or (3) Herbert Schmidt Deputy Combo. *ATF.

3. All records relating to the manufacture, specifications, or rifling characteristics of all firearms marketed, sold, or otherwise identified under the "Deputy Marshal" or "Deputy Combo" name. *ATF.

4. All records collected and/or generated for the prosecution of Mr. Mikos relating to the manufacture, specifications, or rifling characteristics of all firearms marketed, sold, or otherwise identified under the "Deputy Marshal" or "Deputy Combo" name. *ATF.

5. All records relating to the manufacture, specifications, or rifling characteristics of Herbert Schmidt Waffenfabrik Model 21 and Model 21S firearms. *ATF.

1

6.      All records relating to the manufacture, specifications, distribution, or rifling characteristics of all firearms marketed, sold, or otherwise identified as "Model 21." * ATF.

7.      All records relating to identification of the manufacturers of firearms imported, distributed, or sold by Hawes Firearm Company. *ATF.

8.      All versions of the FBI's General Rifling Characteristics database available at the time of trial in May 2005.

9.      All records relating to the creation, maintenance, and development of the FBI's General Rifling Characteristics database, including the sources of information relied upon in the creation, maintenance, or expansion of the database, or any additions, deletions, or revisions.

10.     All records relating to any actual analysis or attempt to perform any analysis, including bullet lead analysis, of the bullets recovered from the body of Joyce Brannon, including bench notes, logs, photographs or other contemporaneous records made at the time of the analysis.

11.     Access, for the purposes of testing and/or analysis, to the bullets (tested and untested) recovered from Joyce Brannon's body.

12.     Access, for purposes of testing and/or analysis, to the leather chair in which Joyce Brannon's body was discovered.

13.     Access, for purposes of testing and/or analysis, to the holster seized from Ronald Mikos's storage locker and used at Mr. Mikos's trial.

14.     Access, for purposes of testing and/or analysis, to all cartridges or ammunition seized from Mr. Mikos's vehicle on or after February 5, 2002.

15.     Access, for purposes of testing and/or analysis, to the rusty revolver with a blue steel finish that was seized at Shirley King's residence on January 6, 2002, by the Skokie Police Department and later incorporated into search warrants for Acorn Storage on February 4, 2002, and March 4, 2002. *Skokie Police Department.

16.     All records relating to any attempt to analyze the railroad tie from Patricia DePaepe's home, including bench notes, logs, or other contemporaneous records made at the time of analysis.

17.     Access, for purposes of testing and/or analysis, to the railroad tie seized from Patricia DePaepe's home.

18.     All records generated or collected by FBI Agent Paul Tangren pertaining to the investigation for prosecution of Mr. Mikos, and related records of any other person and/or the FBI Laboratory, who verified his research and conclusions, including but not limited to worksheets, a complete set of bench notes, any and all handwritten or other notes, electronically recorded data and/or notes, correspondence, police reports, and any and all

2

data obtained or relied upon by Agent Tangren, any other analyst, and/or the FBI Laboratory.

19. All records relating to the test-firing of .22-caliber firearms undertaken by Agent Tangren during his investigation in this case, including an inventory of all firearms available to him from the FBI sample arsenal.

20. Access, for purposes of testing and/or analysis, to all firearms test-fired by Agent Tangren in the course of his investigation in this case, including but not limited to the .22 long-rifle caliber Herbert Schmidt L.A. Deputy revolver and the .22 long-rifle caliber Herbert Schmidt Deputy Marshal mentioned in Agent Tangren's direct testimony in this case as well as all other physical evidence seized and/or analyzed by Agent Tangren in this case.

21. All documents of professional misconduct, unlawful conduct, and/or disciplinary proceedings, including but not limited to complaints (written and/or oral), investigation of such complaints or allegations, disciplinary reports, and/or official findings, formal and/or informal, concerning Agent Tangren, the lead FBI investigator on ballistics in this case.

22. All records from K-Mart Corporation regarding the sale of any and all firearms bearing the serial number 328966, including any firearms with a serial number consisting of an initial digit or letter followed by 328966 from January 1, 1968 through December 31, 2002. *K-Mart (including a successor entity).

23. All records regarding the investigation of Ronald Mikos from January 1, 1998, through May 23, 2005, including but not limited to information related to the type and model of weapons possessed by Mr. Mikos.

24. All records of statements made in the presence of law enforcement or other investigating agents, including the prosecution team, and any information and/or observations of Mr. Mikos, his residences and/or hisvehicles, during the investigation from January 1, 1998, through May 23, 2005. *DOJ, CPD.

25. All records regarding the investigation and seizure of firearms from Ronald Mikos on January 24, 1989, in Chicago, Illinois. *ATF, CPD.

26. All records created by any investigative agent or entity in relation to domestic disturbance calls, including those on June 9, 2001, and January 6, 2002, in which an officer from the Skokie Police Department seized firearms from Ronald Mikos and/or Shirley King. *Skokie PD.

27. All records, including but not limited to evaluations, assessments, and interviews of Adonis Mikos, Ronald Mikos and/or Shirley King, arising from the court-related custody and parenting litigation between Ronald Mikos and Shirley King regarding their son, Adonis Mikos.

28. All records pertaining to marriage counseling involving Patricia DePaepe and Ronald Mikos with Norbert Simon. *Norbert Simon.

3

29. All records relating to any actual analysis or attempt to analyze Ronald Mikos's breath, blood, urine or other bodily fluids within twenty-four hours of his arrest. *CPD.

30. All records relating to the United States Marshal's custody of Ronald Mikos prior to and during trial, including but not limited to transport logs, medical and mental health records, sanctions or disciplinary reports, and records of communications from, to or regarding Mr. Mikos. *Marshal Service.

31. All records relating to the custody of Ronald Mikos at the Metropolitan Correctional Center in Chicago, Illinois ("MCC Chicago") before, during and following his trial including but not limited to transport logs, sanctions or disciplinary records, grievances, medical and mental health records, records of communications from, to or regarding Mr. Mikos, all records of phone calls legal, personal and professional visits, all records of medications and dates administered to him. *MCC.

32. All recordings, transcripts and summaries of telephone calls involving Ronald Mikos while in law enforcement custody, including calls involving Mr. Mikos to and from MCC Chicago and/or the Chicago Police Department. *MCC, CPD.

33. All records relating to protocols, rules and/or policies of MCC Chicago regarding the identification and treatment of mentally ill and/or incompetent inmates from January 1, 2002, through December 31, 2005. *MCC.

34. All records relating to Dr. James Knoll's evaluation of Ronald Mikos, including all communications with him regarding same.

35. All records of referrals, complaints or investigations from the United States Drug Enforcement Administration ("DEA") that mention Ronald Mikos or his license to prescribe controlled substances. *DEA.

36. All records relating to *United States v. Mikos*, 97-CV-2494 (N.D. Ill. 1997), including but not limited to the investigation(s) that preceded such matter, the consent decree and final judgment that resolved such matter, and the monitoring or follow-up performed under such consent decree regarding violations of the Controlled Substances Act.

37. All records from any investigative entity, including but not limited to the FBI, DOJ, and/or the United States Department of Health & Human Services ("HHS"), relating to any investigation of Ronald Mikos undertaken by HHS. *HHS.

38. All records related to Ronald Mikos's bankruptcy litigation, including Case Nos. 88 B 9030 and 94-10215 (N.D. Illinois). *Trustee(s).

39. All records of professional misconduct, unlawful conduct, and/or disciplinary proceedings, including but not limited to complaints (written and/or oral), investigation of such complaints or allegations, disciplinary reports, and/or official findings, formal and/or informal, concerning Mary Beth King and Renee Reyes, the lead investigators. *HHS Office of Inspector General.

4

40. All records pertaining to the following witnesses: June Creighton, Shirley Watts, Kamille Das-Goldflies, Beatrice Lauten, Andrea Schleifer, John Kane, Stacey Rosenfeld, Shirley King, Charles Lobosco, Jeffrey Wessell, Krikor Topouzian, Ross Merel, Janet Brown, Carl Malin, James Dugo, Dan Gibbons, Samuel Davis, Janet Bunch, and Leticia Mayorga. *HHS, CPD.

41. All handwritten, typed or recorded (audio, video and/or digital) statements made by any witness in the presence of any law enforcement and/or government agent in the course of the investigation of Mr. Mikos and/or Joyce Brannon's death, including but not limited to the witnesses listed immediately above. *HHS, CPD.

42. All records regarding the reliance on or the use of anonymous sources in the effort to investigate or prosecute Mr. Mikos, or to investigate Joyce Brannon's death, including the informant status and identity of any individual and his/her status as a cooperating witness for a government agency and/or law enforcement agency. *HHS, CPD.

43. All records relating to the investigation of Charles Lobosco from January 1, 1998, through May 31, 2005. *HHS.

44. All records relating to interview of and/or statements made by Elaine Rosenfeld pertaining to the investigation and prosecution of Ronald Mikos.

45. All records relating to any investigation of Brian Susca in connection with Joyce Brannon's death. *CPD.

46. All records pertaining to physical and/or mental examinations and scientific testing, including polygraph examination, in connection with the investigation of Mr. Mikos, including those related to witnesses and suspects/potential perpetrators. *CPD.

47. All records relating to any fingerprint analysis, including attempted analysis, at the crime scene or concerning evidence gathered at the crime scene, including bench notes, logs, or other contemporaneous records made at the time of collection and time of analysis. *CPD.

48. All records relating to DNA analysis, including attempted analysis, at the crime scene or concerning evidence gathered at the crime scene, including bench notes, logs, or other contemporaneous records made at the time of collection and time of analysis. *CPD.

49. Any other records and/or tangible item(s) potentially favorable to Mr. Mikos, including all records and/or tangible item(s) that would tend to support the claims and allegations made in his petition.

50. All records relating to Philip McKenzie's analysis, research, evaluation and testimony regarding Verizon AMA records, cell site map, and cell tower evidence, including any previously undisclosed documentation from Mr. McKenzie pertaining to his investigation of the cell service evidence in this case. * Verizon Wireless.

51. All records of tangible evidence, including wiretap recordings, related to surveillance of Mr. Mikos, including but not limited to the week leading up to Mr. Mikos's arrest of February 5, 2002. *CPD.

52. All records of data gathered, copied, downloaded and/or removed from Ronald Mikos's Palm Pilot, mobile phone, and personal computer(s), or any other electronic device seized or obtained in relation to the investigation of Mr. Mikos. *CPD.

53. All records of Sergeant James A. Gibson's investigation and search of Joyce Brannon's home on January 27, 2002, including but not limited to information related to the copy of viewable files from item (1) (per the CPD evidence inventory list) a generic personal computer, and item (3) twenty (20) computer diskettes. *CPD

54. All records related to the search of the "Cobalt" safe belonging to Ronald Mikos, seized from June Creighton's home on February 6, 2002, and returned on May 9, 2002.

55. All records presented to the DOJ Office of the Attorney General in an application to seek the federal death penalty from 2000 – 2005, including but not limited to "Capital Case Review" forms, "Death Penalty Evaluation" forms, and "Non-decisional information" forms.

56. All records related to audit(s) and/or investigations of Ronald Mikos by the Internal Revenue Service (IRS). *IRS.

57. All records related to audit(s) and/or investigations of Ronald Mikos by the Centers for Medicare and Medicaid Services (CMS). *CMS.

58. All records pertaining to Ronald Mikos and/or related to the investigation for his prosecution generated and/or collected by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). *ATF.

59. All records pertaining to Ronald Mikos and/or related to the investigation for his prosecution generated and/or collected by the U.S. Drug Enforcement Administration (DEA). *DEA

60. All records pertaining to Ronald Mikos and/or related to the investigation for his prosecution generated and/or collected by the Federal Bureau of Investigation (FBI).

61. All records pertaining to Ronald Mikos and/or related to the investigation for his prosecution generated and/or collected by the HHS Office of Inspector General. *HHS Office of Inspector General.

62. All records pertaining to Ronald Mikos and/or related to the investigation for his prosecution generated and/or collected by the Illinois Department of Health and Human Services. *Ill. DHHS.

6

63. All records pertaining to Ronald Mikos and/or related to the investigation for his prosecution generated and/or collected by the Chicago Office of the Medical Examiner. *ME office.

64. All records pertaining to Ronald Mikos and/or related to the investigation for his prosecution generated and/or collected by the Chicago Police Department. *CPD.

65. All records pertaining to Ronald Mikos and/or related to the investigation for his prosecution generated and/or collected by the Skokie Police Department. *Skokie PD.

66. All records pertaining to Ronald Mikos and/or related to the investigation for his prosecution generated and/or collected by the United States Marshal Service. *Marshal Service.

67. All records pertaining to Ronald Mikos and/or related to the investigation for his prosecution generated and/or collected by the Social Security Administration. *SSA.

68. All records pertaining to Ronald Mikos and/or related to the investigation for his prosecution generated and/or collected by a federal or state professional licensing agency. * Illinois Department of Financial and Professional Regulation; SSA.

69. All records pertaining to Ronald Mikos and/or related to the investigation for his prosecution that relate to his education and academic history.

70. All records pertaining to Ronald Mikos and/or related to the investigation for his prosecution that relate to his professional background and/or employment history.

71. All records pertaining to Ronald Mikos and/or related to the investigation for his prosecution that relate to his social history and background.

72. All records pertaining to Ronald Mikos and/or related to the investigation for his prosecution that relate to his personal medical history. * Illinois Retina Associates.

73. All records pertaining to Ronald Mikos and/or related to the investigation for his prosecution that relate to his mental health, addiction, or mental illness. * Advocate Good Samaritan Hospital, Illinois Professional Assistance Program, Lutheran General Hospital, Rush University Medical Center.

7