**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 1:10-cv-6331 |
| Respondent, | ) | |
| | ) | Underlying Case: No. 1:02-CR-00137 |
| v. | ) | |
| | ) | Hon. Ronald A. Guzman |
| RONALD MIKOS, | ) | |
| | ) | CAPITAL CASE |
| Petitioner. | ) | |

---

**PETITIONER RONALD MIKOS'S REPLY IN SUPPORT OF**
**HIS INITIAL MOTION FOR LEAVE TO CONDUCT DISCOVERY**

---

Leane Renée (*pro hac vice*)
Beth Ann Muhlhauser (*pro hac vice*)
Office of the Federal Public Defender
  for the Middle District of Pennsylvania
Capital Habeas Unit
100 Chestnut Street, Third Floor
Harrisburg, PA 17101
(717) 782-3843

April A. Otterberg
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL  60654-3456
(312) 222-9350

*Attorneys for Petitioner Ronald Mikos*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.      This Discovery Motion Concerns Mr. Mikos's Efforts to Develop a Record That
        Was *Not* Presented at Trial Due to Numerous Constitutional Violations. ......................... 2

II.     Mr. Mikos Does Not Need to Prove His *Brady* or Other Claims to Establish the
        Good Cause That Is Sufficient to Grant His Discovery Motion. ....................................... 8

III.    Mr. Mikos Has Demonstrated Good Cause for the Specific Discovery He Seeks, As
        Such Discovery Will Help Him Prove the Claims in His § 2255 Motion. ........................ 11

        A.      Mr. Mikos Seeks an Order Confirming the Government's Agreement to
                Allow His Counsel Access to Trial Exhibits. ........................................................ 11

        B.      The Government's Narrow View of Mental Health Evidence Does Not
                Undercut Mr. Mikos's Showing of Good Cause to Obtain Discovery
                Demonstrating His Long History of Severe Mental Illness and Drug and
                Alcohol Dependence. .............................................................................................. 12

        C.      Mr. Mikos Has Established Good Cause to Support Discovery to Validate
                His *Brady* Claims. ................................................................................................. 18

        D.      Mr. Mikos Is Entitled to Discovery to Support His Claims That the
                Government Presented—and Trial Counsel Inappropriately Failed to
                Address—False and Misleading Testimony about Firearms and Ballistics
                Evidence. ................................................................................................................. 19

        E.      Mr. Mikos's Claim Regarding the Unconstitutionality of the Federal Death
                Penalty Is Not Procedurally Defaulted, and He Has Shown Good Cause for
                Discovery to Support This Claim. .......................................................................... 22

CONCLUSION ...................................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Barefoot v. Estelle*, 463 U.S. 880 (1983) ...................................................................................... 9

*Bousley v. United States*, 523 U.S. 614 (1998) ............................................................................. 22

*Bracy v. Gramley*, 520 U.S. 899 (1997) .......................................................................... 3, 8, 9, 23

*Brady v. Maryland*, 373 U.S. 83 (1963) ....................................................................................... 13

*Brown v. United States*, 688 F. App'x 644 (11th Cir. 2017) ........................................................ 22

*Cone v. Bell*, 556 U.S. 449 (2009) ......................................................................................... 13, 14

*Conway v. Houk*, No. 07-cv-345, 2009 WL 961199 (S.D. Ohio Apr. 8, 2009) ........................... 23

*Crivens v. Roth*, 172 F.3d 991 (7th Cir. 1999) ............................................................................. 23

*Ford v. Wainwright*, 477 U.S. 399 (1986) (plurality) .................................................................... 9

*Harris v. Nelson*, 394 U.S. 286 (1969) ........................................................................................... 9

*Hutton v. Mitchell*, No. 05-cv-2391, 2008 WL 4283318 (N.D. Ohio Sept. 16, 2008) ................ 23

*Kyles v. Whitley*, 514 U.S. 419 (1995) ............................................................................................ 9

*Massaro v. United States*, 538 U.S. 500 (2003) ........................................................................... 22

*McCleskey v. Kemp*, 481 U.S. 279 (1987) .............................................................................. 23, 24

*Sample v. Colson*, 958 F. Supp. 2d 865 (W.D. Tenn. 2013) ....................................................... 23

*Strickland v. Washington,* 466 U.S. 668 (1984) ........................................................................... 16

*United States v. Carson*, 978 F. Supp. 2d 34 (D.D.C. 2013) ....................................................... 11

*United States v. Mikaelian*, 168 F.3d 380 (9th Cir. 1999) ........................................................... 13

*United States v. Palivos*, No. 08-CV-5589, 2010 WL 3190714
    (N.D. Ill. Aug. 12, 2010) ................................................................................................ 9, 10, 11

*United States v. Sampson*, 486 F.3d 13 (1st Cir. 2007), *cert. denied*, 553 U.S. 1035 (2008) ....... 23

*United States v. Severson*, 3 F.3d 1005 (7th Cir. 1993) ............................................................... 13

**Other Authorities**

ABA GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN
  DEATH PENALTY CASES (1st ed. 1989) ............................................................................... 16

ABA GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN
  DEATH PENALTY CASES (rev. ed. 2003) ............................................................................ 16

ABA STANDARDS FOR CRIMINAL JUSTICE (3d ed. 1993) ................................................................. 16

## INTRODUCTION

In his initial motion for discovery, Petitioner Ronald Mikos asks this Court to provide him with the tools to develop the claims he has asserted in his § 2255 Motion—claims that, if proven true, will entitle him to relief from his conviction and his death sentence. (Doc. 122 (hereinafter, the "Motion"); Doc. 123 (supporting memorandum of law (the "Mem.").) The standard on this Motion is a low one: good cause, which is to be construed liberally in this death penalty case. (Mem. 2-6.) Mr. Mikos has satisfied that standard fully: he has made specific requests and demonstrated to this Court how access to the materials he seeks—which he cannot obtain without this Court's assistance—will help him develop his claims and prove his right to relief. (*See generally id.*)

In response, the Government is dismissive of Mr. Mikos's discovery requests and asks this Court to apply a standard that is unsupported by the rules or case law. (*See* Doc. 124 (hereinafter, the "Resp.").) Boiled down, the Government's argument is that Mr. Mikos supposedly cannot obtain discovery unless he shows that he is, in fact, entitled to relief in these proceedings, *as well as* that he was entitled, before his trial, to obtain the information he seeks now. The Government also takes issue with the scope of Mr. Mikos's requests and his need for additional evidence, contending that Mr. Mikos should be satisfied with the material in his post-conviction counsel's possession as a result of their work to obtain files, including the files of trial counsel.

None of these arguments is correct or overcomes the showing of good cause that Mr. Mikos has made on this Motion. Mr. Mikos does not need to prove his case to obtain discovery; if that were the standard, there would be no reason for the rules governing § 2255 proceedings to contain any provisions allowing discovery. It is also no response to Mr. Mikos's Motion for the Government to point to the files that post-conviction counsel have already obtained: Mr. Mikos seeks the right to discover and develop evidence *not* presented at trial, including evidence that trial

counsel failed to obtain or that the Government improperly failed to disclose. By its very nature, this evidence is not among the materials that post-conviction counsel could have obtained from trial counsel. And in challenging the scope of Mr. Mikos's requests, the Government misconstrues, among other things, the nature and reach of the mitigation investigation that trial counsel were required to undertake to fulfill Mr. Mikos's constitutional right to effective assistance of counsel at the penalty phase of his case.

For the reasons set forth below and in Mr. Mikos's Motion, the Government's Response does not overcome Mr. Mikos's showing of good cause. Below, Mr. Mikos first provides an overview of the factual issues presented in his § 2255 Motion, focusing on those that are relevant to his discovery requests and that the Government ignores or seeks to minimize in its Response. (*See* Part I, below.) Next, Mr. Mikos reviews the legal principles that govern this Motion and the ways in which the Government seeks to impose an unduly heightened burden on Mr. Mikos before he can obtain discovery. (*See* Part II, below.) Thereafter, Mr. Mikos reaffirms his demonstration of "good cause" regarding specific discovery subject areas that the Government addresses in its Response: (1) Mr. Mikos's severe mental illness and addiction, (2) potential *Brady* violations, (3) ballistics and toolmarks evidence, and (4) the unconstitutionality of the federal death penalty. (*See* Part III, below.) Mr. Mikos respectfully asks this Court to grant his Motion and allow him to obtain the discovery he seeks.

**ARGUMENT**

**I.      This Discovery Motion Concerns Mr. Mikos's Efforts to Develop a Record That Was *Not* Presented at Trial Due to Numerous Constitutional Violations.**

The Government spends a portion of its Response describing the evidence presented at Mr. Mikos's trial, skewed heavily to the evidence related to the guilt phase rather than the penalty phase. (*See, e.g.*, Resp. 3-5, 9-13, 15-18.) Although it is true that a jury convicted Mr. Mikos of

2

first-degree murder, discovery related to guilt-phase issues is only one aspect of Mr. Mikos's Motion, as he also seeks discovery to enable him to present the mitigation case that his trial counsel was constitutionally defective for failing to pursue and present. (*See* Mem. 14-16.)

The Government also focuses on the trial evidence in a flawed effort to try to persuade this Court that the only facts that matter are those admitted at trial and that, as a result, Mr. Mikos has failed to demonstrate "good cause" to obtain discovery. (*See, e.g.*, Resp. 3-5, 9-13, 15-18.) This approach also fails. Mr. Mikos's § 2255 Motion—and this Motion—primarily concern the facts that were *not* presented at trial because of, among other constitutional violations, his trial counsel's deficient performance and the Government's improper failure to fulfill its *Brady* obligations. Mr. Mikos has alleged specific facts that, if proven true, entitle him to relief from both his conviction and his death sentence. In this Motion, Mr. Mikos seeks access to evidence and information that will help him prove those claims. Thus, what matters here is whether there is the requisite connection between the discovery Mr. Mikos seeks and the claims he has pled; if so, he has demonstrated "good cause" to obtain that discovery. *See, e.g.*, *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997).

In particular, throughout his § 2255 Motion, Mr. Mikos alleges specific facts to demonstrate that he received ineffective assistance of trial counsel in violation of the Sixth Amendment. (*See* Doc. 1 ("§ 2255 Mot.") 34-38, 53-58, 104-07, 110-13.) The two trial lawyers in this case—one of whom had no prior experience in murder investigations and murder trials, let alone prior experience in capital proceedings—were outmatched from the get-go. (*Id.* at 40.) Together, they failed to effectively investigate, prepare, and present a defense to the crime and a case for mitigation that would have spared Mr. Mikos from a death sentence. (*Id.* at 53.) To prove those claims in this proceeding, Mr. Mikos seeks evidence on a number of subjects that trial

3

counsel ineffectively failed to investigate and pursue. That defective performance is a primary reason for the volume of Mr. Mikos's discovery requests. The requests do not reflect a "fishing expedition," as the Government dismissively asserts. (Resp. 9.) Rather, the volume of Mr. Mikos's requests directly reflects the extent of trial counsel's deficient performance, magnified by the Government's *Brady* violations and various other violations of Mr. Mikos's rights.

One area for which Mr. Mikos seeks discovery concerns the ballistics and toolmarks evidence in his case. Before trial, it became clear that the Government had only circumstantial evidence to try to link Mr. Mikos to the murder. (§ 2255 Mot. 8-10.) The crux of the Government's case was to be evidence and expert testimony suggesting that, before the offense, Mr. Mikos had possessed a gun that could have possibly fired the bullets recovered from the decedent, Joyce Brannon. (*Id.*) Trial counsel filed a motion with the Court for authorization and funds to retain a competing expert, but the motion was denied. (*Id.*) After the denial, trial counsel continued to search for expert assistance, but they were only able to obtain an affidavit from a local consultant who lacked the experience and precise expertise to challenge the Government's expert ballistics and toolmarks analysis. (*Id.*) The Court, in turn, rejected the affidavit as "not very convincing." (*Id.* at 9.) Therefore, when the Government presented at trial its expert, FBI Special Agent Paul Tangren, defense counsel had no expert to counter what turned out to be the inherent flaws in Agent Tangren's analysis and testimony, including the inaccurate information on which his opinions were based. (*Id.* at 10.) Mr. Mikos seeks evidence to prove counsel's deficient performance and the due process violation arising from the denial of the expert assistance that he sought. As one example, Mr. Mikos seeks access to the physical evidence that was the subject of Agent Tangren's analysis, so that post-conviction counsel, working with the very expert that trial

4

counsel was unable to retain, can present the rebuttal to Agent Tangren's analysis that should have been offered at trial in Mr. Mikos's defense. (Mem. 33-37.)

Mr. Mikos's trial counsel also knew, before trial, that they needed to be prepared to present a mitigation case if the jury decided not to acquit Mr. Mikos. Mr. John Beal, the defense attorney with no prior capital case experience, was put in charge of the defense's efforts in this regard. (§ 2255 Mot. 18; Doc. 1-1, Ex. 1, Beal Aff. ¶¶ 21-23.) However, neither he nor anyone else from the defense team actively directed the mitigation investigation, and, as a result, counsel failed to identify, articulate, investigate, or present a cohesive mitigation story. (*Id.*) Through their investigation to date, Mr. Mikos's post-conviction counsel have identified numerous ways in which trial counsel's mitigation investigation and presentation were defective, and Mr. Mikos's § 2255 Motion makes specific allegations about these deficiencies. (*See* § 2255 Mot. 53-79.) Mr. Mikos seeks the discovery he needs to prove that trial counsel fell far below the standard of care by failing to investigate and present an alternative mitigation narrative that would have given the jury a reason to choose life instead of death.

In particular, Mr. Mikos seeks to prove that trial counsel unreasonably failed to investigate and offer evidence regarding his mental illness. Although trial counsel presented evidence of Mr. Mikos's psychiatric symptoms during the penalty phase, they failed to explain how his condition would have contributed to his alleged behavior at the time of the offense, or how the symptoms were otherwise mitigating. (§ 2255 Mot. 51.) The jury heard evidence from Dr. Larry Siever that Mr. Mikos met the diagnostic criteria for major depressive disorder, attention deficit disorder, substance dependence, several personality disorders, and schizotypal personality disorder, but trial counsel failed to articulate to the jury why these conditions tended to explain Mr. Mikos's behavior and mitigate any culpability. (*Id.* at 55.) Similarly, Dr. Jeff Victoroff testified that Mr. Mikos

5

displayed certain brain abnormalities, but trial counsel failed to explain how this was relevant to the jury's mitigation analysis or related to Mr. Mikos's alleged conduct or mindset at the time of the offense. (*Id.* at 56.) This incomplete and inaccurate explanation of Mr. Mikos's mental illness, which derived from trial counsel's deficient mitigation investigation, led the jury to believe, at most, only that Mr. Mikos suffered from a number of personality disorders. In fact, as post-conviction counsel seek to prove, Mr. Mikos suffers from a more serious, biologically-based disorder—bipolar disorder—that had a much greater impact on his behavior at the time of the offense. (*Id.* at 58-59.)

Trial counsel was deficient for failing to investigate the indications—even in the records that the defense did obtain—that suggested that Mr. Mikos may have been suffering from bipolar disorder. (*Id.* at 43-45.) The records described aspects of Mr. Mikos's erratic behavior, disordered speech, substance abuse, failed interpersonal relationships, and financial problems, but trial counsel did not use those leads to investigate further or to assess whether these behaviors were the sign of a serious mental illness like bipolar disorder. (*Id.*) Indeed, trial counsel never actually considered whether Mr. Mikos suffered from bipolar disorder, which means they never asked their mitigation specialists to seek out information that might document Mr. Mikos's bipolar disorder and never sought out witnesses, such as Mr. Mikos's ex-wife, who observed Mr. Mikos at various points in his life and could have provided evidence of behaviors demonstrating bipolar disorder. (§ 2255 Mot. 61-62; Doc. 1-1, Ex. 1, Beal Aff. ¶¶ 33, 41-42.) Even after Dr. Siever—with the limited record that trial counsel could provide—noted in his report that "there [was] evidence of bipolarity" (*id.* at 45 & Doc. 1-2, Ex. 20, Siever Report at 22), trial counsel failed to discuss that observation with Dr. Siever, let alone investigate further, such as from collateral sources (Doc. 1-1, Ex. 1, Beal Aff. ¶¶ 43-45). In his affidavit attached to the § 2255 Motion, Dr. Siever noted the

6

importance of "information from collateral sources" to diagnose bipolar disorder, since "[i]ndividuals who suffer from bipolar disorder lack insight" and "don't know they are ill." (Doc. 1-2, Ex. 20, Siever Aff. ¶ 10.) Dr. Siever observed that he "did not have that type of information in this case," and he lamented the trial team's failure to run down whether Mr. Mikos had bipolar disorder, given that "many of Mr. Mikos's psychiatric symptoms and cognitive abnormalities, and much of his behavior, could have been explained by the presence of this disease." (*Id.* ¶ 11.)

In addition, because he never considered the possibility that Mr. Mikos suffered from bipolar disorder, Mr. Beal was unaware of—and did not discuss with Dr. Siever—"the ramifications and strategic considerations surrounding a possible diagnosis of bipolar disorder, such as whether bipolar disorder would have helped to explain or mitigate Mr. Mikos's behavior around the time of the offense." (Doc. 1-1, Ex. 1, Beal Aff. ¶¶ 45.) Nor did trial counsel consider whether Mr. Mikos's substance abuse and dependency, including his abuse of the drug Effexor around the time of the offense, magnified the effects of Mr. Mikos's bipolar disorder—evidence that would have further undercut the Government's effort to paint Mr. Mikos as a cold, calculating killer. (§ 2255 Mot. 63; Doc. 1-1, Ex. 1, Beal Aff. ¶¶ 47-48.)

Accordingly, evidence of Mr. Mikos's bipolar disorder, along with specifics on how his substance abuse and dependency contributed to his mental state, was not developed or presented at trial. Many of Mr. Mikos's current discovery requests seek the information related to these issues that trial counsel could have—and should have—sought before trial, whether from the Government or by subpoena if necessary. For instance, Mr. Mikos seeks access to records related to direct psychological evaluations and observations of his behavior, grooming, and appearance; medical records; court and counseling records; records of behavior while in custody; professional and disciplinary records; and financial records. (Mem. 17-23.) These records are exactly the types

of collateral records that Dr. Siever has affirmed would have been useful in evaluating Mr. Mikos before trial. They are also the types of records that would be useful to Dr. Lisa Rone, who confirmed Mr. Mikos suffers from bipolar disorder in her post-conviction affidavit. (*See generally* Doc. 1-2, Ex. 21, Rone Aff.) Based on the record developed without formal discovery by post-conviction counsel, Dr. Rone concluded, "[a]s a result of bipolar disorder and the combined effects of alcohol and opiate dependence, Mr. Mikos's actions, judgment and perceptions of reality were profoundly impaired at the time of Joyce Brannon's murder in January, 2002," such that he had "little ability to control his behavior." (*Id.* ¶¶ 61-62.) The mitigation evidence that Dr. Rone describes is dramatically different from the disjointed, chaotic, and ineffective presentation that trial counsel offered at Mr. Mikos's trial. And Dr. Rone's assessment supports Mr. Mikos's claims regarding his incompetence at the time of his trial. (*Id.* ¶ 64.) The Court should grant Mr. Mikos the right to obtain the discovery he needs to further support Dr. Rone's analysis and then prove he is entitled to relief from his conviction and death sentence.

## II.     Mr. Mikos Does Not Need to Prove His *Brady* or Other Claims to Establish the Good Cause That Is Sufficient to Grant His Discovery Motion.

Throughout its Response, the Government incorrectly argues that Mr. Mikos cannot obtain discovery without showing that: (a) he would have been entitled to discover such information from the Government at the time of his trial, and (b) the Government improperly failed to disclose such information. (*See* Resp. 1; *see also id.* at 7, 14, 18-20.) In doing so, the Government conflates the standard of proof on Mr. Mikos's *Brady* claims with the low "good cause" standard that applies to this Motion seeking discovery. As shown in Mr. Mikos's Motion, the "good cause" standard does *not* require him to prove the merit of his *Brady* or other claims, nor does it require him to show that counsel was, in fact, deficient for failing to seek or failing to obtain, from the Government or otherwise, the discovery he seeks now. (Mem. 2-6.) The Supreme Court in *Bracy* made clear that

8

success on the merits is *not* the standard for obtaining discovery. Writing for a unanimous Court, Chief Justice Rehnquist emphasized that the factual theory that Bracy sought to prove through discovery was "quite speculative." 520 U.S. at 905. In reversing the Court of Appeal's denial of discovery, the Supreme Court acknowledged, "[it] may well be, as the Court of Appeals predicted, that petitioner will be unable to obtain evidence sufficient to support [his legal claim], but we hold that he has made a sufficient showing, as required by Habeas Corpus Rule 6(a), to establish 'good cause' for discovery." *Id*. at 909.

Thus, "good cause" is met "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is [ ] entitled to relief.'" *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). In that situation, "'it is the duty of the court to provide the necessary facilities and procedures for adequate inquiry.'" *Id.* at 909 (quoting *Harris*, 394 U.S. at 300). Here, Mr. Mikos has: (1) made specific allegations warranting relief, and (2) shown why the requested information would assist him in developing the facts of his claims. As a result, he has demonstrated "good cause," *see id.*, and that is all that is required to grant this Motion.

In trying to hold Mr. Mikos to a higher standard than the one established in *Bracy*, the Government relies on a case from Judge Lefkow, *United States v. Palivos*, No. 08-CV-5589, 2010 WL 3190714 (N.D. Ill. Aug. 12, 2010). The Government's reliance is misplaced. First, *Palivos* was not a capital case that is subject to the heightened scrutiny requirements of the Eighth Amendment;[1] rather, it involved an attorney sentenced to one year in prison after his conviction

---

[1] Capital post-conviction procedures require heightened reliability. *E.g.*, *Kyles v. Whitley*, 514 U.S. 419, 422 (1995) (applying heightened reliability to habeas-petition *Brady* claim); *Ford v. Wainwright*, 477 U.S. 399, 411-12 (1986) (plurality) (emphasizing demand for post-conviction fact-finding at heightened standard of reliability); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983) (nature of penalty is proper consideration in deciding whether to issue certificate of appealability).

for conspiracy to obstruct justice, stemming from his involvement in a questionable real estate deal. *Id.* at \*1. The circumstances of Mr. Mikos's case are drastically different, as he was convicted of murder and has been sentenced to death. As Mr. Mikos has shown, discovery should be granted more liberally in capital cases because the stakes for petitioners like Mr. Mikos are so much higher. (Mem. 6-8.)

Second, the court's rationale in *Palivos* does not apply here. The petitioner in *Palivos* asserted *Brady* claims, but the court rejected the petitioner's efforts to obtain discovery to try to support those claims, concluding that the claims rested on nothing other than "his belief that he might uncover something that might have been useful" to impeach a cooperating witness at trial. 2010 WL 3190714, at \*7. By contrast, here, Mr. Mikos has pled specific allegations to support the likely existence of *Brady* violations, including documented evidence of the FBI's "I-Drive" policy and the failure to disclose to trial counsel a 302 or other report concerning the interview of Elaine Rosenfeld. (§ 2255 Mot. 123-26.) In addition, with respect to his claims for ineffective assistance of counsel, the court in *Palivos* was persuaded that the petitioner was "free to gather . . . statements from witnesses he believes would exonerate him," noting that the petitioner "ha[d] not stated that anyone ha[d] refused a request for documentation of his allegations." 2010 WL 3190714, at \*6. Here, by contrast, Mr. Mikos cannot obtain the requested discovery without an order from this Court. As Mr. Mikos explained in his Motion, he has made other efforts to obtain many records he now seeks by, among other things, submitting Freedom of Information Act requests under federal and state law and sending written record requests to many third parties. (Mot. ¶ 6.) While some of these efforts have yielded results, several agencies have not responded at all to informal requests and one responded that while they have the records requested, they will not provide them absent a court order or subpoena. (Mot. ¶ 6; *see also* Ex. 1 (email from Illinois

10

Department of Financial and Professional Regulation indicating the need for a subpoena to obtain additional records concerning Mr. Mikos) (attachments omitted).) Simply put, *Palivos* does not support denying Mr. Mikos's Motion.

The Government's reliance on *United States v. Carson*, 978 F. Supp. 2d 34 (D.D.C. 2013) (Resp. 7), is similarly unavailing. There, the district court denied the petitioner's requests for discovery related to: (1) two grand jury witnesses who provided exculpatory testimony but who ultimately did not testify at trial because they could not be located, and (2) the relationship between the federal and state law enforcement agencies that had investigated the crimes for which the petitioner was convicted. *Carson*, 978 F. Supp. 2d at 38-40. However, *Carson*, like *Palivos*, was not a capital case, *id.* at 38, and accordingly, did not involve the same Eighth Amendment concerns. Additionally, the petitioner in *Carson* sought discovery based primarily on a twenty-four-year-old newspaper article that merely corroborated information that was available to him at trial concerning cooperation between federal and state law enforcement agencies. *Id.* at 39. As explained herein and in Mr. Mikos's Motion, the discovery Mr. Mikos seeks is not available to him at present and was not developed at the time of his trial, including because of trial counsel's constitutionally deficient performance.

### III. Mr. Mikos Has Demonstrated Good Cause for the Specific Discovery He Seeks, As Such Discovery Will Help Him Prove the Claims in His § 2255 Motion.

#### A. Mr. Mikos Seeks an Order Confirming the Government's Agreement to Allow His Counsel Access to Trial Exhibits.

The Government contends that Mr. Mikos's request for access to trial exhibits is "moot" because the Government has agreed to provide such access. (Resp. 8.) That is a helpful clarification of the prior discussions between Mr. Mikos's counsel and the Government's counsel, which occurred before Mr. Mikos filed his Motion. Nonetheless, Mr. Mikos's counsel believes it

11

would be appropriate to commit the Government's agreement to court order, as counsel have not yet received access to such exhibits.

**B. The Government's Narrow View of Mental Health Evidence Does Not Undercut Mr. Mikos's Showing of Good Cause to Obtain Discovery Demonstrating His Long History of Severe Mental Illness and Drug and Alcohol Dependence.**

Much of the discovery Mr. Mikos seeks relates to his effort to demonstrate his long history of severe mental illness and drug and alcohol dependence; that history is relevant to claims in both the guilt and penalty phases of Mr. Mikos's trial, as well as his categorical ineligibility for the death penalty. Contrary to the Government's focus on competence (*see* Resp. 9-14), mental health and chemical dependence records are an integral component of Mr. Mikos's penalty-phase mitigation claims, *as well as* his competency claims. More specifically, those records will support claims related to Mr. Mikos's severe mental illness, substance addiction and neurological deficits, for penalty phase mitigation and competency, as well as trial counsel's ineffectiveness for failing to investigate, develop, and fully litigate these issues. As discussed more fully below, the Court should reject the Government's narrow position that the discovery requests are too broad or cannot add any new support to Mr. Mikos's claims of lack of competence to stand trial or of the ineffectiveness of trial counsel for neglecting to assert his incompetence.

**1. The Government's *Brady* Obligations Extended to Potential Mitigation Evidence.**

In opposing Mr. Mikos's discovery requests related to his mental and emotional state, the Government misapprehends its *Brady* obligations, apparently contending that its *Brady* obligations did not extend to the disclosure of mitigation evidence. (*See* Resp. 19-21.) For example, the Government erroneously argues that any interview documents relating to Elaine Rosenfeld,[2] none

---

[2] Elaine Rosenfeld is the mother of Stacy Rosenfeld, a former partner of Mr. Mikos's and the mother of two of his children. Ms. Elaine Rosenfeld knew Mr. Mikos and observed his impulsive

of which were disclosed to Mr. Mikos prior to trial, were not *Brady* material because they do not relate to specific criminal allegations against Mr. Mikos. (Resp. 20 ("[Rosenfeld] had no material information concerning defendant's commission of the Medicare fraud or the murder").) But *Brady*—a death penalty case—makes clear that the Government was required to disclose relevant, exculpatory evidence, regardless of whether the evidence is relevant to the guilt or sentencing phase. *See Brady v. Maryland*, 373 U.S. 83, 87-88 (1963). In *Brady*, the Supreme Court explained, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material *either* to guilt or to punishment." *Id.* at 87 (emphasis added).

In *Cone v. Bell*, 556 U.S. 449 (2009), the Supreme Court reaffirmed that *Brady* applies to disclosure of material evidence, even if it is material only to mitigation. The Supreme Court held the *Cone* prosecutors violated *Brady* by suppressing evidence of the petitioner's severe drug addiction, which was relevant to the death sentence that the prosecution sought. *Id*. at 475. The Supreme Court held that the suppressed evidence, which "might have persuaded one or more of jurors that [petitioner's] drug addiction . . . was sufficiently serious to justify a decision to imprison him for life rather than sentence him to death," constituted *Brady* material because it "may well have been material to the jury's assessment of the proper punishment." *Id.* The Seventh Circuit likewise has affirmed that *Brady* applies to evidence relevant to sentencing rather than guilt. *United States v. Severson*, 3 F.3d 1005, 1013 (7th Cir. 1993) (remanding for resentencing and holding "*Brady* applies to sentencing"); *see also United States v. Mikaelian*, 168 F.3d 380, 388-89 (9th Cir. 1999) (*Brady* extends to evidence that is "material either to guilt or to punishment," but declining to remand where the undisclosed evidence was not material to either phase).

---

and odd behavior for several years prior to the homicide and believed him to be suffering from bipolar disorder. (*See* § 2255 Mot. 47, 70; Doc. 1-1, Ex. 14, Rosenfeld Aff. ¶¶ 6-7.)

In sum, then, the Government's *Brady* obligations extended to potential mitigation evidence. *See Cone*, 556 U.S. at 475. Mr. Mikos has every right to seek discovery, now, to prove that the Government narrowly construed *Brady* at the time of his trial and failed to fulfill its obligation to turn over evidence that would have supported a life sentence rather than a death sentence.

### 2. Mr. Mikos Seeks to Develop the Mitigating Evidence *Not* Presented at His Trial During the Penalty Phase.

The Government also wrongly asserts that Mr. Mikos "already has the information needed to litigate his *habeas* claims" regarding his claims related to his incompetency and his mental illness and substance dependency. (Resp. 10.) In support, the Government points to three mental health evaluations conducted before trial and one evaluation from immediately after his trial. (*Id.* at 9-12.) This argument reveals a serious misunderstanding of the evidence that was (and was *not*) presented at trial, the nature of Mr. Mikos's § 2255 claims, and Mr. Mikos's showing of good cause to support his requests for discovery. Mr. Mikos's claims in this proceeding involve precisely the evidence that was *not* made available to those experts or to trial counsel, because trial counsel failed to develop that evidence. Put another way, these trial experts relied on background and other factual materials that were materially incomplete. Mr. Mikos asks to remedy that incomplete picture in this proceeding, including through the discovery he seeks.

For example, defense expert Dr. Diane Goldstein examined Mr. Mikos four times and performed an extensive battery of psychometric testing, but she reviewed only a few collateral documents to prepare for her evaluation of Mr. Mikos. (*See* Doc. 1-3, Ex. 23, Goldstein Report at 2.) Defense expert Dr. Larry Siever reviewed various records to evaluate Mr. Mikos, but he also admittedly relied on Mr. Mikos himself for a narrative of his past psychiatric and other history, even though Mr. Mikos was sometimes vague and inconsistent. (*See* Doc. 1-2, Ex. 20, Siever Aff.

¶¶ 4-5, 10.) Dr. Siever's work should have been—but was not, due to trial counsel's deficient performance—supplemented by records and witness statements that provided additional information, context, and details surrounding Mr. Mikos's incompetency, biologically-based mental illness, and substantial drug and alcohol dependence. The records upon which defense expert Dr. Jeff Victoroff relied to perform his evaluation were similarly lacking. (*See* Doc. 1-3, Ex. 25, Victoroff Report at 1-2.) Trial counsel's failure to obtain and then provide a complete set of collateral documents to these experts before trial and for preparation of a mitigation case goes to the very heart of Mr. Mikos's ineffective assistance of counsel claims and establishes the need for the items requested in the Motion.[3]

The Government also argues that the evaluation performed by Dr. Rone at the behest of post-conviction counsel obviates the need for more discovery now because counsel has had access to such an expert in these post-conviction proceedings. (Resp. 12.) Yet like those experts who evaluated Mr. Mikos before trial, Dr. Rone would benefit from more source material by which to complete, or further elaborate upon, her psychiatric workup of Mr. Mikos. Moreover, the Government actually highlights the need for discovery by contending that Dr. Rone is not credible considering her lack of familiarity with his mental state at the time of trial. (*See id.*) Mr. Mikos needs records from the time of his trial to add further support to Dr. Rone's conclusions and to prevent further unfounded challenges from the Government about Mr. Mikos's competence at the time of trial or the manner in which his severe mental health impairments affected his ability to control his behavior around the time of the offense.

---

[3] Just as the defense experts were limited to an incomplete record, Dr. Knoll, the Government's mental health expert at the penalty phase, also did not have a complete set of background information to form his opinion after his evaluation of Mr. Mikos.

The Government's glaring misapprehension of the nature and scope of mental health evidence continues through to its arguments asking the Court to deny access to specific and relevant social history data. (*See* Resp. 12-14.) The Government contends that Mr. Mikos's discovery requests for information relating to his "professional and disciplinary" history, "spending habits/addiction," and "behavior while in custody," are merely a "fishing expedition" intended to delay these proceedings. (*Id.* at 8, 13.) Not so, and the Government's argument against such discovery ignores that the information Mr. Mikos seeks will support his claims related to competency, other mental health conditions, and associated ineffectiveness of counsel. Mr. Mikos's discovery requests are exactly the kinds of requests that qualified defense teams make to comply with well-established standards and methodologies for developing a behavior chronology to reveal life-long patterns that can support a serious, persuasive, and cohesive presentation of mental illness as a mitigating factor. *See, e.g.*, *Strickland v. Washington,* 466 U.S. 668, 688, 691 (1984) (Counsel has "a duty to bring to bear such skill and knowledge as will render the [proceeding] a reliable adversarial testing process . . ." and "[t]his can be done only if counsel actually investigates."); *see also* ABA GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN DEATH PENALTY CASES, Guideline 11.4.1, Investigation (1st ed. 1989); 1989 ABA Guideline 11.9.2(D) & Commentary ("counsel . . . should not let any possible ground for relief go unexplored or unexploited"); ABA STANDARDS FOR CRIMINAL JUSTICE, 4-4.1(a) (3d ed. 1993) ("Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction."); ABA GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN DEATH PENALTY CASES, Guideline 10.7, Investigation (rev. ed. 2003).

16

Indeed, the Government's argument wrongly attempts to fault post-conviction counsel for filing this Motion and seeking to fulfill their duty as capital § 2255 counsel to investigate and develop a full and complete social history in support of Mr. Mikos's meritorious constitutional claims. (Resp. 8-14.) Because trial counsel was ineffective (§ 2255 Mot. 34-38, 42-50), such a full and complete history was not developed previously. That is the basis for Mr. Mikos's discovery requests now. Requests for discovery ranging from bankruptcy records and child custody proceedings to professional files and records relating to Mr. Mikos's academic history are expected to produce records showing hallmark signs and symptoms of severe mental illness as well as prior instances of Mr. Mikos behaving "unusually or erratically." (Mem. 13-14.) Limiting discovery to, say, *Brady* material would be improper because that would mean post-conviction counsel's ability to pursue mitigation evidence would turn on whether the Government—which had no reason to investigate mitigation issues—sought and suppressed relevant evidence at the time of trial. For example, Mr. Mikos has asked for access to records that reflect his behavior and communications while incarcerated, as such records may support his competency claims and his claims that trial counsel were ineffective for failing to investigate and prove his severe mental illness. (Mem. 20-21.) To obtain such discovery, Mr. Mikos does not need to prove such records were improperly withheld by the Government—though they may have been—because at a minimum, trial counsel was also ineffective for failing to obtain such records. Mr. Mikos is entitled, now, to know what is in those records and to use them, as may be appropriate, to support his competency and ineffective assistance claims.

Finally, the Government makes a particularly specious argument that Mr. Mikos is not entitled to more discovery because of the "huge amount" of discovery he supposedly already has. (Resp. 14.) Of course, *quality*—not merely quantity—is what matters here. By its nature, this

17

case is large and record-heavy, but that basic fact does not undercut Mr. Mikos's showing of good cause to obtain discovery. The genesis of this case involves extensive records on Mr. Mikos's erratic and fraudulent health care billing practices. Although the investigation into the murder of Ms. Brannon became the center of this case, multiple federal and state entities were engaged throughout the process, and the records generated or considered discoverable were voluminous. But a large set of records cannot substitute for a complete set. Post-conviction counsel seek discovery on behalf of Mr. Mikos precisely because they have identified areas where the record is incomplete. In the Motion, Mr. Mikos has linked each of his requests to specific allegations and claims in his habeas petition warranting relief and has shown why the requested information would assist the factual development of his claims related to competency and mitigation. (Mem. 12-25.) Thus, he has established good cause and is entitled to this discovery.

C. **Mr. Mikos Has Established Good Cause to Support Discovery to Validate His *Brady* Claims.**

Mr. Mikos also has demonstrated good cause for his discovery requests that seek to prove the Government violated its *Brady* obligations. (Mem. 40-48.) The Government incorrectly contends that Mr. Mikos's *Brady* claims consist of mere "speculation" (Resp. 19-20), while minimizing the evidence post-conviction counsel have gathered to date to suggest that at least some *Brady* material was, in fact, withheld from Mr. Mikos's trial counsel. Mr. Mikos's claims about the Government's "I-Drive" are not "imagine[d]," as the Government asserts (Resp. 19), but based on multiple independently-reported sources (§ 2255 Mot. 123-26), and—after obtaining the discovery he seeks on this Motion—Mr. Mikos deserves the opportunity to prove up those claims. In addition, notwithstanding the challenge that Mr. Mikos has in trying to identify information or documents that he does not have because they were improperly withheld from him, Mr. Mikos was able to identify a specific instance where a witness with specific and material mitigating

18

information, Elaine Rosenfeld, was interviewed by the FBI, yet no report of her interview was ever provided to trial counsel. (*Id.* at 125.)

Of course, as demonstrated above, Mr. Mikos need not prove the merits of his claims before obtaining discovery. (*See* Part II, above.) All he needs to do is show good cause, and he has done so: his allegations, supported by specific evidence, raise a serious question about whether the Government satisfied *Brady* in this case. (*See* § 2255 Mot. 123-26.) The Government assures the Court in its brief that "the government produced at the pre-trial stage all information required to be produced under . . . *Brady*," while at the same time contending that Mr. Mikos's *Brady* claims are based on "unadorned speculation." (Resp. 7, 14.) It is the Government's assurance that is the "unadorned speculation," as this statement stands in contrast to Mr. Mikos's efforts, notwithstanding his lack of access to the Government's files, to come forward with specific indications that *Brady* violations have occurred. Simply put, based on the evidence identified to date suggesting not all information was disclosed to him, Mr. Mikos is entitled to see for himself whether the Government complied with *Brady*. He respectfully asks this Court to grant him the discovery that will enable him to do just that.

> **D.** **Mr. Mikos Is Entitled to Discovery to Support His Claims That the Government Presented—and Trial Counsel Inappropriately Failed to Address—False and Misleading Testimony about Firearms and Ballistics Evidence.**

Mr. Mikos contends that trial counsel was ineffective for failing to retain an expert to challenge the Government's unreliable and misleading expert testimony that one of Mr. Mikos's guns could have fired the bullets recovered from the decedent's body, as well as that the trial court erred in denying such expert assistance for Mr. Mikos. (§ 2255 Mot. 81-87.) The Government seeks to avoid providing discovery directed to these claims, arguing that Mr. Mikos should be limited to the existing record and the affidavit of post-conviction defense expert, David Lamagna.

19

(*See* Resp. 18.)  Nothing in the Government's Response overcomes Mr. Mikos's showing of good cause entitling him to ballistics- and toolmarks-related discovery.

At trial, the Government argued that Mr. Mikos owned a Herbert Schmidt Deputy Combo Model 21 revolver, using that supposed fact to argue that such a gun could have fired the bullets that killed Ms. Brannon.  (Resp. 15.)  Mr. Mikos seeks discovery to bolster his challenge to the idea that he owned such a gun.  (Mem. 36.)  Specifically, the Government contended that Mr. Mikos's missing gun was a Herbert Schmidt, relying on the testimony of an employee of the Bureau of Alcohol, Tobacco and Firearms regarding her research of a specific serial number on a pistol.  (§ 2255 Mot. 127.)  Yet Mr. Mikos has come forward with evidence in his § 2255 Motion that firearms manufactured at that time were not required to have unique serial numbers and that the traced serial number could have been present on many different firearms.  (*Id.* at 94; Doc. 1-1, Ex. 6, Lamagna Aff. ¶¶ 32-35.)  The Government's reassertion, now, of the trial testimony contending that the missing firearm was uniquely a Herbert Schmidt Deputy Combo Model 21 revolver does not contradict Mr. Mikos's showing and, in fact, is beside the point on this discovery Motion.  (*See* Resp. 15-17.)  Mr. Mikos seeks evidence that is outside the current record and that was *not* presented at trial; that is the kind of information relevant to proving up Mr. Mikos's claims regarding ineffective assistance of counsel and other constitutional violations tied to the presentation of this false gun-related evidence.

The Government also attempts to shield the ballistics testimony from post-conviction scrutiny by denying that the testimony was a central component of the Government's case.  (*See id.*)  The Government urges this Court to reject all ballistics discovery because *the Government's* trial expert, Agent Tangren, never specifically linked Mr. Mikos's missing firearm to the projectiles extracted from Ms. Brannon.  (*Id.* at 16.)  But the Government's arguments at trial belie

20

that assertion. At trial, the Government began its closing argument by telling the jury that Mr. Mikos's missing firearm was the murder weapon—and then reiterated that association at least *eight times* throughout its argument. (Ex. 2, May 4, 2005 Trial Tr. at 2787, 2788 ("he had the gun, he had the bullets"), 2797 ("January 24th he picks up his guns . . . ."), 2799 ("He has the Hawes .22 revolver he got a few days before. He walks to that unlocked door . . ."), 2800 (". . . he uses the final bullet in his 6-shot revolver."), 2802 ("because there's a firing-pin impression on that cartridge case, and that matches the defendant's Hawes .22 revolver."), 2802 (summarizing Agent Tangren's testimony), 2803 ("Everything except that Hawes revolver. . ."), 2804 ("It's a .22 long-rifle revolver that matches the bullets in Joyce Brannon's body.").) The Government even specifically asserted that the rifling characteristics from the missing firearm in fact "match[ed]" the characteristics from the bullets found at the crime scene. (*Id.* at 2802 ("They Match. The rifling characteristics match.").) The Government did not overlook the importance of that evidence at trial, but it now asks this Court to ignore the obvious significance and refuse to permit Mr. Mikos the opportunity to take the discovery necessary to prove there was no "match." Mr. Mikos has shown he is entitled to take that discovery, and the Court should permit him to do so.

Finally, in his § 2255 Motion, Mr. Mikos challenges the validity of testimony by the Government's ballistics expert, Agent Tangren. (§ 2255 Mot. 81.) In this Motion, Mr. Mikos seeks to support this claim by obtaining access to all materials involved in Agent Tangren's evaluation, including his bench notes, all data recorded in his lab / workshop, an index to the inventory of firearms from which he selected the firearm he test fired, and all exculpatory material relevant to his prior testimony in other cases. (Mot. 4; Mem. 27, 41-46.) The Government seeks to avoid specific ballistics discovery with a naked assertion that Agent Tangren purportedly disclosed all his notes, all his testing, and all exculpatory material relevant to his prior testimony

21

in other cases. (Resp. 19.) In other words, the Government, which had no obligation to investigate or search for exculpatory evidence while prosecuting Mr. Mikos, now argues that Mr. Mikos must accept its statement that all ballistics evidence has already been provided, all without any proof of that supposed fact and not even any suggestion of any inquiry to Agent Tangren regarding the disclosure of his file. The Government should not be permitted to stifle all inquiry into Agent Tangren's testing and reliability merely by making this kind of blanket, unsupported statement in its Response.

>    **E.      Mr. Mikos's Claim Regarding the Unconstitutionality of the Federal Death Penalty Is Not Procedurally Defaulted, and He Has Shown Good Cause for Discovery to Support This Claim.**

Finally, the Government misconstrues the law by contending that Mr. Mikos has procedurally defaulted his claim that the federal death penalty has been administered in an unconstitutional manner and that, as a result, he supposedly cannot show good cause for discovery to support this claim. (Resp. 21.)

At the outset, Claim 8 is not procedurally defaulted. The evidence Mr. Mikos now seeks to develop, concerning records presented to the DOJ Office of the Attorney General in applications to seek the federal death penalty between 2000 and 2005, was not part of the record or otherwise available to him on direct appeal. As a result, he had no prior ability to present Claim 8, and there is no procedural default. "Where . . . facts essential to a claim are not in the appellate record, the general rule in favor of a procedural bar does not apply and the issue may be raised on collateral review to permit further factual development." *Brown v. United States*, 688 F. App'x 644, 651-52 (11th Cir. 2017) (citing *Bousley v. United States*, 523 U.S. 614, 621-22 (1998)); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) (claims based on ineffective assistance of counsel typically require further factual development through § 2255 proceedings); *Crivens v. Roth*, 172

22

F.3d 991, 995-96 (7th Cir. 1999) (petitioner did not procedurally default claim he could not have presented in prior proceedings because he lacked access to the evidence).

But Mr. Mikos does not have to prove his claims—or show the lack of any procedural default—to demonstrate good cause and thereby unlock his entitlement to discovery. *See Bracy*, 520 U.S. at 908-09 (the focus of a Habeas Rule 6 discovery request is not the probability that the requested discovery will yield anything, but whether the sought-after facts, if true, would help establish a claim for relief). "So long as the procedural default defense has not been adjudicated, its pleading does not provide a basis to deny discovery." *Conway v. Houk*, No. 07-cv-345, 2009 WL 961199, at *3 (S.D. Ohio Apr. 8, 2009) (granting discovery, including document requests and depositions, in capital § 2254 case, despite assertion that claims were procedurally defaulted); *see also Hutton v. Mitchell*, No. 05-cv-2391, 2008 WL 4283318, at *2 (N.D. Ohio Sept. 16, 2008) (concluding allegations of procedural default did not bar discovery and granting leave to obtain government records and depose trial counsel); *see also Sample v. Colson*, 958 F. Supp. 2d 865, 888, 904-06 (W.D. Tenn. 2013) (granting discovery request on apparently procedurally defaulted claim where the requested evidence could establish cause for procedural default). Thus, the Government's erroneous assertion of procedural default does not bar Mr. Mikos's discovery requests now.

Nor is the Government correct in asserting that Mr. Mikos has no right to discovery because Claim 8 "seek[s] a change in the law or, at best, the novel application of the law." (Resp. 21 (citing *McCleskey v. Kemp*, 481 U.S. 279, 294-97 (1987) and *United States v. Sampson*, 486 F.3d 13, 26 n.5 (1st Cir. 2007), *cert. denied*, 553 U.S. 1035 (2008)).) For one thing, this argument is an attack on the merits of Mr. Mikos's Claim 8, which is not appropriate on this Motion. The Government is also wrong. As explained in Mr. Mikos's § 2255 Motion, the data on which Mr. Mikos's claim

23

is based, including the decision-making process of the Attorney General's office, does not exclusively rely on the "broad statistical studies held insufficient in *McCleskey*." (§ 2255 Mot. 131.) Accordingly, *McCleskey* and the cases that follow it do not provide a basis to deny Mr. Mikos's discovery requests related to Claim 8.

## CONCLUSION

Mr. Mikos respectfully requests that this Court grant his Initial Motion for Leave to Conduct Discovery and enter orders that: (a) permit Mr. Mikos to conduct discovery pursuant to Habeas Rule 6; (b) require the Government and identified federal agencies to provide the discovery set out more fully in the Motion and Exhibit 1 to its accompanying memorandum of law; and (c) grant Mr. Mikos leave to issue the subpoenas *duces tecum* identified in the Motion and Exhibits 10 through 26 to its accompanying memorandum of law.

Dated: January 15, 2021

Respectfully submitted,

RONALD A. MIKOS

By:    s/ Leane Renée
        Leane Renée (*pro hac vice*)
        Beth Ann Muhlhauser (*pro hac vice*)
        Asst. Federal Public Defenders
        Middle District of Pennsylvania
        Capital Habeas Unit
        100 Chestnut Street, Third Floor
        Harrisburg, PA 17101
        (717) 782-3843

By:    s/ April A. Otterberg (w/consent)
        April A. Otterberg
        JENNER & BLOCK LLP
        353 N. Clark Street
        Chicago, IL  60654-3456
        (312) 222-9350

*Attorneys for Petitioner Ronald Mikos*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of January 2021, I caused to be electronically filed the foregoing **Petitioner Ronald Mikos's Reply in Support of His Initial Motion for Leave to Conduct Discovery** with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Leane Renée
Leane Renée