# EXHIBIT 2

5/4/2010 REPORT OF TRIAL PROCEEDINGS (014)                                    2778

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

UNITED STATES OF AMERICA,     )
                              )
          Plaintiff,     )
                              )
     -vs-               ) No. 02 CR 137
                              )
RONALD MIKOS,             )
                         ) Chicago, Illinois
                         ) May 4, 2005
     Defendant.    )  9:30 o'clock a.m.

VOLUME XIV

REPORT OF TRIAL PROCEEDINGS

BEFORE THE HONORABLE RONALD A. GUZMAN, and a Jury.

For the Plaintiff:       HON. PATRICK J. FITZGERALD,
                         United States Attorney,
                         BY:  MR. JEFFREY H. CRAMER
                            MR. JOHN C. KOCORAS
                         219 South Dearborn Street
                         Chicago, Illinois  60604
                         (312) 353-5300

For the Defendant:       MR. JOHN M. BEAL
                         53 West Jackson Boulevard
                         Suite 1180
                         Chicago, Illinois  60604
                         (312) 408-2766
                         MS. CYNTHIA GIACCHETTI
                         53 West Jack Boulevard
                         Suite 1500
                         Chicago, Illinois  60604
                         (312) 939-6440

Official Court Reporter:     Geraldine D. Monahan
                         219 South Dearborn Street
                         Room 1222
                         Chicago, Illinois 60604

Unsigned

are to disregard what they say and rely upon your own collective recollection as a group of what the evidence actually was.

Nevertheless, these statements and arguments are intended to help you understand the issues, the evidence, and the reasonable inferences to be drawn from the evidence.

You can expect that the attorneys will do two things. They will summarize the evidence for you and they will argue to you what the reasonable inferences are that you should draw from that evidence. So I ask that you now give your close attention as I recognize the attorneys for their closing arguments.

Mr. Kocoras?

MR. KOCORAS: Thank you, your Honor.

On January 24, 2002, Joyce Brannon suffered from a variety of conditions; none of them were fatal. She had no idea that that afternoon when she got off the phone with this man, the defendant, Ron Mikos, that she would be dead on Sunday.

She had no idea that that afternoon when she called her sister, Janet, upset because he had called her and pleaded with her not to testify against him that she would ruin him, not to show up, that that long distance call would be the last time she would speak is Janet again.

She had no idea that that very morning this defendant was at the Skokie Police Department picking up eleven guns, including a Hawes .22-caliber 6-shot revolver. He was determined to make sure that she never saw that grand jury and

that she never saw you, and three days after that phone call, he went into that apartment and sought saw to it that she wouldn't see that grand jury and she wouldn't see you.

That Sunday, January 27, 2002, there was one person in the world who wanted Joyce Brannon dead.  He had the motive.  He had pleaded with her unsuccessfully not to testify, and she told him she was going to testify; she was going to tell the truth. She wasn't going to risk her nursing license over him, and if he didn't want to face the consequences of his actions, he shouldn't have done the fraud.

He had the motive, he had the gun, he had the bullets, he had scouted out the church and written down the information outside of that church, and he had the blind determination to see to it that he got away with his fraud at all costs.

Thank you very much for your attention through this trial.  It's been a long trial.  It should have been much shorter.  This should have been a fraud case.  Joyce Brannon should have come into this courtroom and testified about whether or not the defendant really did those 72 surgeries on her feet, but he chose to make it much more than that.

As he sits here he faces 25 counts in the indictment, 25 separate charges, and soon you will be asked to determine whether he is guilty or not guilty of those 25 charges.  And in considering that, there are some important things you have to remember.  You have to remember that the burden is on us, the

Brannon, who had told him she was going to testify.

We know from phone records that on January 18th, the defendant called Jean Kalish and talked to her for five minutes, making sure she's on board.

January 24th he picks up his guns, and that's the same day he calls Joyce Brannon and he calls other people, Charley Lobosco, Marilyn Jarlin and another patient, Mr. Jacobs.

Those guns had been taken from him January 6. By the morning of January 7, he had that 7-11 money order that we took a picture of, he had that FOID card application filled out, he had a little picture of himself to go the FOID card, because the next day he was determined to get his guns back.

January 25, he calls Lobosco three times. January 26, he calls Noreen Hutchinson and Jean Klause, two people who testified by video at this trial that he hadn't done any of the surgeries.

We're getting closer to the grand jury day, and he's making sure that everyone is in his camp. That's Saturday.

Sunday, January 27, Joyce Brannon is murdered.

January 28, he calls Lobosco and Marilyn Jarlin, and three days later, January 31, 2002, of the seven people who at that point had been subpoenaed to testify against him, none testified.

And then on February 5, shortly after that, he's arrested. And I'm going to talk about the searches of the car

Unsigned

and he's hitting this cell tower not far from the church.

January 26, he hits this cell tower at Hollywood and Lake Shore Drive, within blocks of the church. And his cell phone hits that around 6:20 p.m., right around the time Joyce will be murdered the following day.

And what happens on the 27th? He begins his day up here in Northbrook, and by the afternoon he's worked his way down to around Skokie. And at 6:02 p.m., he takes the last call of the night, and there will be no cell phone activity for the defendant for the rest of that night until the next day.

The next call at the southeast base of this cell tower, less than half an hour from the church even if you drive 55 on the expressway. On the base facing the church, and that's his last call of the night. He had plenty of time to get to the church and kill Joyce Brannon before that 911 call at 7:12 p.m. that night.

What happens that Sunday night? He drives to that apartment. He has the Hawes .22 revolver he got a few days before. He walks to that unlocked door of the apartment, the door that had the sign that says a handicapped woman lives inside, and he walks in. And walks down that long hall that you saw on the video, past Joyce's bedroom on his right, and there's Joyce in the chair.

And maybe she starts to get up slowly by putting her right hand on the arm of that chair, the only way she can get

Unsigned

5/4/2010 REPORT OF TRIAL PROCEEDINGS (014)  2800

up, slowly. And he fires once into her back, and he fires a

second time into her back, and a third time into her back. And

he gets closer and he fires a fourth time and a fifth time, this

time into her neck. And that's -- you have that stippling on

her neck so you know the gun was within inches of her neck when

he fired those shots, and he's depositing that dense, vaporous

lead on top of the chair.

And if those five shots weren't enough, he uses the

final bullet in his 6-shot revolver and he places the hot barrel

of that revolver flush against the back of her head and

assassinates her.

Members of the jury, this wasn't a burglary. This was

a hit. This was an assassination. Joyce Brannon hadn't

double-crossed the Mob or stolen money from some drug cartel.

She had gotten her toenails cut by him. She was going to tell

the truth about it to the grand jury.

Nobody saw defendant do it. Nobody saw Joyce get

shot. But that doesn't mean Joyce wasn't shot and it doesn't

mean he didn't shoot her. It means he didn't wait for an

audience.

And his fingerprints weren't found, which doesn't mean

he wasn't there. It means he didn't touch anything, or he wore

latex gloves, or they didn't look in places that he might have

touched, but it doesn't mean he wasn't there.

And in opening statement, the defense brought up

Unsigned

fibers, no fibers found.  Well, this isn't CSI, this is real life, and he most certainly was there.

And the defendant left something very telling behind at that crime scene.  He left six things behind:  The bullets that were removed from Joyce's corpse.

What do you know about those bullets?  They're .22 long-rifle, rim-fire, brass-coated, round-nose, solid-nose, concave base with multiple knurled cannulures.  Those are the bullets he left behind.

What does he have in his car on February 5th, shortly after this murder?  What does the one man who had motive to kill Joyce Brannon, the person who, three days before she died, had called Joyce Brannon and pleaded with her not to testify against him, the person who had in his car a note with the information off the sign on the church where she lived, what does he have in his car?  A partially empty box of .22 Remington brass-coated, long-rifle, rim-fire, round-nose, solid nose, concave base with multiple knurled cannulure bullets.  That's what he has in his car.

That's not all he has.  He has a spent cartridge casing in his car for those same bullets, the same bullets that were in Joyce's body and the same bullets that were in his car.  He has that Remington cartridge casing.

Now, this isn't some old French fry or dime or something that somebody might typically find on the floor mat of

their car.  This is a spent cartridge casing.  And you know how those cartridge casing work.  In a semiautomatic, they're fired off the side of the gun onto the floor when the gun is fired, but in a revolve, they stay behind in the cylinder until they're manually emptied.

He has one of those in his car, and that's very telling, because there's a firing-pin impression on that cartridge case, and that matches the defendant's Hawes .22 revolver.

Paul Tangren from the FBI laboratory in Quantico pulled this Hawes .22 revolver, manufactured by Herbert Schmidt, out of the FBI's reference collection, and he looked at the firing pin on this and he told you that firing pins come in a variety of shapes, and this one matched that cartridge casing.

But you have more than just the firing pin.  You know that of the thousands of guns in the FBI database, there were 16 different types of guns that Paul Tangren saw that could have left these impressions, these rifling characteristics, on the bullets.  And of those 16, they were manufactured by Herbert Schmidt, just like the defendant's Hawes gun.

But you don't just have that.  Paul Tangren went and got that gun out of his collection and fired it.  And what do you know:  They match.  The rifling characteristics match.  And you heard that that's a Deputy Marshal and the defendant's gun is a Deputy Combo, but you heard from Bob Burrows that Hawes,

5/4/2010 REPORT OF TRIAL PROCEEDINGS (014)                    2803

Herbert Schmidt, made a lot of gun that were the same and you put different names on the body.

Make no mistake about it. Other guns may have made those rifling impressions, and neither Special Agent Tangren or anybody in law enforcement can compare particular bullets from a murder victim to a particular gun without the gun, which is exactly why that gun is missing.

On January 24th, the day of that pleading phone call to Joyce Brannon, he had picked up the 11 guns, he had picked up hundred of rounds of ammunition. He picked up a knife and sheath and two black bags from the Skokie Police Department. On February 5, 2002, what's in his storage locker? Everything. Everything except that Hawes revolver, everything down to the bullets, 116 of these 45 bullets. There are 116 in that storage locker. 82 of this .9-millimeter bullets; 82 in the storage locker. All the other guns, the knife, found in the duffle bag.

Not only down in the duffle bag, but you remember he got the three goldenrod copies of that three-page Skokie property inventory? All three of those were recovered: One on his person when he was arrested, one in the box with that empty .22 leather holster, and one inside the zipper pocket of one of the shotgun cases. Everything is accounted for but that one Hawes revolver.

Nine days after he had that Hawes revolver in his hand, after he had it in his car, it's gone forever. It wasn't

5/4/2010 REPORT OF TRIAL PROCEEDINGS (014)                                                    2804

misplaced.  It wasn't lost.  He didn't want law enforcement to

find it and he didn't want you to hear about it.  The man, the

one man with the motive to kill Joyce Brannon, the man who had

the note in his car with the information off the sign from where

she lived, who had the bullets, who had unsuccessfully pleaded

with her not to testify against him three days earlier, the man

with the blind determination to get back into the Medicare

program and get his money, is missing a gun, and what do you

know.  It's a .22 long-rifle revolver that matches the bullets

in Joyce Brannon's body.

        Joyce should have testified before that grand jury.

She should have testified before you.  And he knew that if you

heard Joyce, who was not elderly, was not mentally ill, she had

physical limitations but she was fine.  She was a nurse and she

understood health care.  She was honest.  He knew that you would

be convinced that he was a complete fraud.  The man who was No.

1 in billing per Medicare beneficiary every year for eight years

in a row amongst podiatrists in Illinois was a complete fraud.

        I want to talk a little about the fraud counts in the

indictment.  And as I said, there are 19 of them, and I'm going

to walk through a chart with you on those 19 fraud counts.

        The first 14 are mail fraud, and that means you have

to find that the United States mails were used.  And you know

the mails were used in these frauds because the checks that are

at issue in these first 14 counts were mailed to the defendant.